MAYER BROWN LLP
STEVEN O. KRAMER (SBN 079626)
*skramer@mayerbrown.com*
JOHN NADOLENCO (SBN 181128)
*jnadolenco@mayerbrown.com*
MELISSA J. PASTRANA (SBN 254307)
*mpastrana@mayerbrown.com*
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071-1503
Telephone: (213) 229-9500
Facsimile: (213) 625-0248

Attorneys for Defendants
AMGEN INC., KEVIN W. SHARER, RICHARD D. NANULA, ROGER M. PERLMUTTER and GEORGE J. MORROW

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

IN RE AMGEN INC. SECURITIES LITIGATION

CASE NO. CV 07-2536 PSG (PLAx)

**DEFENDANTS' EVIDENTIARY OBJECTIONS AND REQUEST TO STRIKE RE CONFIDENTIAL WITNESSES 2-5**

[Filed concurrently with Memorandum of Points and Authorities in Opposition to Class Certification; Request for Judicial Notice; Supporting Declarations of Steven Kramer and Sean E. Harper; and Declarations of Steven Kramer and Scott Rhode in Support of Evidentiary Objections and Request to Strike]

DATE: June 15, 2009
TIME: 1:30 p.m.
PLACE: Courtroom 790 – Roybal

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ....... 1

II. THE COURT SHOULD NOT CONSIDER AND SHOULD STRIKE THE ALLEGATIONS ATTRIBUTED TO CONFIDENTIAL WITNESSES 2-5 ....... 3

III. THE COURT SHOULD NOT ALLOW PLAINTIFF TO AVOID ITS AGREEMENT NOT TO RELY ON CONFIDENTIAL WITNESSES 2-5 ....... 5

IV. CONCLUSION ....... 9

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001) ....................6

*Dukes v. Wal-Mart*, 509 F.3d 1168 (9th Cir. 2007) ....................1

*In re Harmonic, Inc. Sec. Litig.*, 245 F.R.D. 424 (N.D. Cal. 2007) ....................3

*Miller v. Ventro Corp.*, 2004 WL 868202 (N.D. Cal. 2004) ....................3

*Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Systems, Inc.*, 2005 WL 1459555 (N.D. Cal. 2005) ....................3

*United States v. Crisp*, 190 F.R.D. 546 (E.D. Cal. 1999) ....................5

*Williams v. Jader Fuel Co., Inc.*, 944 F.2d 1388 (7th Cir. 1991) ....................4

**RULES**

Federal Rules of Civil Procedure
Rule 12(f) .................... 4, 5
Rule 23(d)(1)(D) ....................5

Federal Rules of Evidence
Rule 602 ....................5
Rule 801 .................... 5, 7
Rule 901 ....................5

**OTHER AUTHORITIES**

*Oncology Tools: A Short Tour*, FDA/Center for Drug Evaluation and Research ....................6

## I. INTRODUCTION

After surviving Defendants' motion to dismiss by relying, in part, on off-label marketing allegations supposedly made by Confidential Witnesses, Lead Plaintiff refused to disclose the names of four of its five Confidential Witnesses and only disclosed the identity of Confidential Witness 1, Diego E. Naranjo. To avoid disclosing the names of Confidential Witnesses 2-5, Plaintiff agreed that it would *not* rely on their supposed allegations to support its Motion for Class Certification ("Motion").[1] But Plaintiff has breached this agreement by specifically relying on the allegations of Confidential Witnesses 2-5 in its Motion (at p. 7, fn. 9). Plaintiff attempts to circumvent this agreement by trying to use Naranjo—the one Confidential Witnesses it did identify—to testify about the allegations of the other undisclosed Confidential Witnesses. Naranjo lacks foundation to do so. At his deposition, Naranjo admitted that he has no personal knowledge about the allegations of the other four Confidential Witnesses. The Court should enforce the parties' agreement and preclude Plaintiff's improper reliance on the allegations of Confidential Witnesses 2-5 in ruling on Plaintiff's Motion.

The Court's exclusion of the supposed allegations of Confidential Witnesses 2-5 is important because, *inter alia*, aside from these allegations, Plaintiff offers no *evidence* common to the class of any supposed off-label marketing policy or practice by Amgen in support of class certification. In moving for class certification, Plaintiff can no longer rely on its conclusory allegations that Amgen "engaged in off-label marketing" (Consolidated Amended Complaint ("Complaint") (¶¶ 81-103). Rather, Plaintiff must now provide *evidence* that a company-wide policy or practice of off-label marketing existed. *Dukes v. Wal-Mart*, 509 F.3d 1168, 1178, n.2 (9th Cir. 2007). But Naranjo's testimony cannot meet that burden for class certification or otherwise. The few pages of

---

1 Six Confidential Witnesses are actually referenced in the Consolidated Amended Complaint. However, according to Plaintiff, the reference to Confidential Witness 6 in Paragraph 101 of the Complaint was an inadvertent typographical error, and should actually read "Confidential Witness 5." Kramer Decl. at ¶ 5, Ex. 4 (Naranjo Depo. at 263:7-11). Thus, Defendants only refer to five Confidential Witnesses.

Naranjo's testimony Plaintiff cites do not support its off-label marketing allegations, and certainly do not provide evidence common to the class of a company-wide practice. Indeed, Naranjo testified that he knew nothing about the allegations supposedly made by Confidential Witnesses 2-5, and accordingly, he lacks foundation to testify about them.

What little evidence Naranjo provided directly refutes Plaintiff's off-label marketing claims: (1) Amgen had standard operating procedures ("SOPs") that prohibited off-label marketing; (2) Amgen trained its employees (including Naranjo) regarding its procedures; and (3) Amgen only allowed an employee to respond to unsolicited questions regarding off-label use. In fact, Naranjo was only able to identify a *single* specific instance of an alleged off-label presentation—a speech by an external consultant (a non-Amgen employee) made to a very small group of medical professionals—that Naranjo *did not attend* but heard about from someone at Amgen. Thus, it is clearly inadmissible hearsay. But in any event, one speech by a non-employee is not evidence common to the class of a company-wide practice. Further, realizing that the alleged presentation was inconsistent with Amgen's policies, Naranjo and an Amgen manager (who did attend the speech) reported it to Amgen's Ombudsman Hotline and Amgen took swift corrective action. The speaker was counselled only to provide on-label information in his speech unless specific unsolicited questions regarding off-label use were asked. Naranjo's other testimony about spreadsheets, calculators and binders, does not establish any company-wide practice of off-label marketing. Naranjo simply lacks foundation to provide support for Plaintiff's off-label claims or certification of a class.

In short, the Court should hold Plaintiff to its agreement and not consider any allegations or claims attributed to Confidential Witnesses 2-5. And given that Plaintiff agreed not to rely on Confidential Witnesses 2 through 5 in support of class certification, the Court would be entirely justified in striking the off-label marketing allegations in the Complaint (¶¶ 81-103) altogether or, at a minimum, striking all the allegations attributable to Confidential Witnesses 2-5.

## II. THE COURT SHOULD NOT CONSIDER AND SHOULD STRIKE THE ALLEGATIONS ATTRIBUTED TO CONFIDENTIAL WITNESSES 2-5

In ruling on Defendants' motion to dismiss, the Court specifically relied on the allegations of the undisclosed Confidential Witnesses contained in Plaintiff's Complaint, concluding "Plaintiffs have pled facts raising the strong inference that Defendants were surreptitiously marketing the off-label uses of Aranesp and Epogen." February 1, 2008 Order, *In re Amgen Inc. Sec. Litig.* (Case No. 07-2536) at 26. Having avoided dismissal based, in part, on the allegations attributed to these Confidential Witnesses, Plaintiff has refused to identify Confidential Witnesses 2-5 during class certification discovery, despite a clear legal obligation to do so. *In re Harmonic, Inc. Sec. Litig.*, 245 F.R.D. 424 (N.D. Cal. 2007) (the identities of confidential witnesses are discoverable); *Miller v. Ventro Corp.*, 2004 WL 868202 (N.D. Cal. 2004); *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Systems, Inc.*, 2005 WL 1459555 (N.D. Cal. 2005).

Amgen served Plaintiff with an interrogatory seeking the identities of each of the Confidential Witnesses referenced in the Complaint but Plaintiff refused to disclose this information, identifying only Confidential Witness 1—Diego Naranjo—a former Amgen sales representative based in Florida.[2] Declaration of Steven Kramer ("Kramer Decl.") at ¶ 2, Ex. 1 (Amended Response to Interrogatory No. 12) and ¶ 5, Ex. 4 (January 16, 2009 Deposition Transcript of Diego E. Naranjo ("Naranjo Depo.") at 62:5-20). Plaintiff's stated reason for refusing to disclose the identities of Confidential Witnesses 2-5 is that these witnesses claimed to be concerned about potential retaliation, an odd claim given that Plaintiff contends they are *former* employees. Complaint ¶ 87 (Confidential Witness 2 is a "former Amgen sales representative"), ¶ 88 (Confidential Witness 3 is a "former Amgen Health Systems manager"), ¶ 91 (Confidential Witness 4 is a "former oncology

---

[2] Naranjo was terminated by Amgen in August 2006 based, in part, on his submission of expense reports without support or any receipts. Subsequently, Naranjo filed a lawsuit against Amgen claiming, *inter alia*, that he was wrongfully terminated. Kramer Decl. at ¶ 5, Ex. 4 (Naranjo Depo. at 63:2-65:25).

sales representative") and 96 (Confidential Witness 5 is a "former district sales manager").

After several meet-and-confer sessions, Plaintiff offered and agreed not to rely upon Confidential Witnesses 2-5 if Defendants would forbear from seeking to identify, depose and use testimony by Confidential Witnesses 2-5:

> My [Plaintiff's counsel's] October 31, 2008 letter makes clear that if defendants forbear from 'seeking to identify, depose and use testimony by the CWs' [Confidential Witnesses 2-5] then plaintiff will not rely on CWs 2 through 5 in prosecuting the case.

Kramer Decl. at ¶ 4, Ex. 3 (Plaintiff's Counsel's January 29, 2009 letter).

Because Amgen wanted to preserve its right to seek disclosure of the identities of Confidential Witnesses 2-5 if the case moved past the class certification stage, the parties ultimately agreed to limit their agreement to this stage: Plaintiff agreed not to rely on Confidential Witnesses 2-5 to support class certification and the parties agreed to revisit the issue, if a class is ultimately certified. In reliance on that agreement, Amgen did not move to compel the identities of Confidential Witnesses 2-5 or to depose them. (Kramer Decl. at ¶¶ 3-4, Exs. 2-3.)

Now, contrary to its promise, Plaintiff seeks to rely on the allegations of Confidential Witnesses 2-5 by using portions of Naranjo's deposition testimony to introduce and corroborate the allegations attributed in Plaintiff's Complaint to Confidential Witnesses 2-5. Motion at p. 7, fn. 9. The Court should reject this artifice because it is completely inconsistent with Plaintiff's promise *not* to rely on Confidential Witnesses 2-5. The Court should enforce the parties' agreement by striking footnote 9 and should refuse to consider the off-label marketing allegations supposedly made by Confidential Witnesses 2-5 in ruling on Plaintiff's Motion. In fact, the Court would be entirely justified in striking those allegations from the Complaint given Plaintiff's promise not to rely on those Confidential Witnesses at any stage of this case. FED. R. CIV. P. 12(f) (allowing court to consider a motion to strike at any point in a case on its own accord); *Williams v. Jader Fuel Co., Inc.*, 944 F.2d 1388, 1399 (7th Cir. 1991)

("Courts have read Rule 12(f) to allow a district court to consider a motion to strike at any point in a case, reasoning that it is considering the issue of its own accord despite the fact that its attention was prompted by an untimely filed motion"); *United States v. Crisp*, 190 F.R.D. 546, 551 (E.D. Cal. 1999) ("A motion to strike matters that are not part of the pleadings may be regarded as an 'invitation' by the movant 'to consider whether [proffered material] may be relied upon."); FED. R. CIV. P. 23(d)(1)(D) (court may require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly).[3]

## III. THE COURT SHOULD NOT ALLOW PLAINTIFF TO AVOID ITS AGREEMENT NOT TO RELY ON CONFIDENTIAL WITNESSES 2-5

In an attempt to avoid its agreement, Plaintiff incorrectly asserts that Naranjo's testimony somehow supports the allegations made by Confidential Witnesses 2-5. Naranjo's testimony did not do so, and his testimony lacks foundation and is based on hearsay. FED. R. EVID. 602, 801 and 901. Contrary to Plaintiff's assertions, Naranjo was unable to confirm the allegations attributed to Confidential Witnesses 2-5. Naranjo testified that he does not have any personal knowledge of the allegations made by the other Confidential Witnesses. Kramer Decl. at ¶ 5, Ex. 4 (Naranjo Depo. at 159:19-160:5). He further testified that he does not know the other Confidential Witnesses and knows of no facts or information concerning their allegations. *Id.* (Naranjo Depo. at 103:12-23; 261:7-264:12). Indeed, when questioned about the specific paragraphs of the Complaint containing allegations attributed by Plaintiff to the other four Confidential Witnesses, Naranjo testified that he did not have personal knowledge or information about them or their claims. *Id.* (Naranjo Depo. at 125:24–126:20; 263:2–264:12).

Plaintiff, for example, claims that Naranjo corroborated the allegations in Paragraph 87 of the Complaint supposedly made by Confidential Witness 2 about "color-

---

[3] The allegations attributed to Confidential Witnesses may be found in Paragraphs 86-91, 94-96 and 101 of the Complaint.

coded spreadsheets." According to the Complaint, these spreadsheets were provided to sales representatives "to promote off-label uses for Aranesp." *Id.* However, when asked about these "color-coded spreadsheets," Naranjo testified that he has never seen the spreadsheets allegedly described by Confidential Witness 2, is unfamiliar with the contents of any such spreadsheet and does not know whether it concerns off-label marketing or promotion. Kramer Decl. at ¶ 5, Ex. 4 (Naranjo Depo. at 122:21-124:22). Thus, Naranjo lacks any foundation and competence to prove or corroborate the allegations supposedly made by other Confidential Witnesses.

Plaintiff also tries to rely on Naranjo to establish a company-wide off-label marketing practice. But his testimony—the only evidence before the Court—flatly contradicts Plaintiff's claim. Naranjo testified that Amgen *did not permit* the off-label marketing or promotion of its products. *Id.* (Naranjo Depo. at 38:7-25; 180:2-19; 184:7-19). Naranjo admitted that Amgen's SOPs *prohibit* off-label marketing and promotion, and that Amgen trained him in that regard. *Id.* at ¶ 5, Ex. 4 (Naranjo Depo. at 179:4-190:7) and ¶¶ 7-9, Exs. 6-8. Indeed, he admitted that off-label information—like that found in Amgen's Proof Source Binders (Complaint ¶ 88)[4]—was provided to assist in responding to questions concerning off-label uses. Kramer Decl. at ¶ 5, Ex. 4 (Naranjo Depo. at 39:10-19; 108:22-110:4; 139:16-140:11; 188:22-189:11). And Naranjo admitted that there was nothing wrong with that. *Id.* (Naranjo Depo. at 128:2-130:20.)[5]

---

[4] Naranjo even refuted Plaintiff's suggestion about discarding the binders (Complaint ¶ 88) by admitting that it is industry practice to discard outdated marketing materials to ensure that salespersons are only operating with current and correct information. Kramer Decl. at ¶ 5, Ex. 4 (Naranjo Depo. at 126:21 – 130:20).

[5] As Plaintiff concedes, off-label use is an accepted and necessary part of the practice of medicine. *See Oncology Tools: A Short Tour,* FDA/Center for Drug Evaluation and Research, ("Neither the FDA nor the Federal government regulate [*sic.*] the practice of medicine. Any approved product may be used by a licensed practitioner for uses other than those stated in the product label. Off-label use is not illegal, but means that the data to support that use have not been independently reviewed by the FDA.") (Defendants' concurrently filed Request for Judicial Notice, Ex 71). *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 350 (2001).

Plaintiff also claims (Complaint ¶ 90) that Naranjo had personal information regarding presentations made by Dr. Patton—an external consultant (a non-Amgen employee)—concerning off-label uses of Aranesp®. But at his deposition, Naranjo testified that he only attended one presentation by Dr. Patton and that Dr. Patton *did not make any improper remarks concerning off-label uses at that presentation*. *Id.* (Naranjo Depo. at 40:18-41:15; 44:13-46:15; 51:21-52:14). Naranjo also testified about another presentation by Dr. Patton—*one that Naranjo did not personally attend*—at which Dr. Patton supposedly discussed the off-label use of Aranesp® for Myelodysplastic Syndrome ("MDS").[6] *Id.* (Naranjo Depo. at 41:16-42:9; 51:21-52:19; 90:18-91:7; 141:24-142:4). Naranjo admits that he only heard about this presentation from others. *Id.* Thus, Naranjo's testimony is inadmissible hearsay—and certainly does not constitute common evidence of off-label marketing. FED. R. EVID. 801.

Equally significant, Naranjo admits that after hearing about the alleged presentation, he followed Amgen's policy and reported the incident. More specifically, Naranjo says he discussed the presentation with a manager of medical liaisons for the region. Kramer Decl. at ¶ 5, Ex. 4 (Naranjo Depo. at 42:22-44:12; 147:5-20.) Pursuant to his training, Naranjo then reported the incident to Amgen's Ombudsman hotline—a 1-800 number used to report ethical issues. *Id.* (Naranjo Depo. at 42:22-44:12.) Naranjo further testified he spoke to Amgen's Human Resources Department that was investigating the incident. *Id.* (Naranjo Depo. at 148:6-13; 153:24-156:8). Dr. Patton was counselled/coached by Amgen regarding his presentation, was receptive to the coaching and said it would not happen again. Declaration of Scott Rhode. Naranjo also testified that, after this incident, he never heard about Dr. Patton making another presentation regarding off-label uses. *Id.* (Naranjo Depo. at 148:25-149:7). In addition, Naranjo admits that he is not aware of any other speaker discussing off-label uses of

---

6 This presentation supposedly concerned the use of Aranesp® to treat anemic patients with MDS.

(Naranjo Depo. at 34:24-35:16; 52:4-53:4; 91:8-16; 140:5-11). Thus, one speaker who discussed an off-label use on one occasion to a small medical group—even if it was admissible—does not substantiate Plaintiff's claim about any company-wide off-label marketing.

Lastly, Naranjo's testimony about "spreadsheets" and "calculators" simply is not relevant, lacks foundation and is insufficient to form the basis of Plaintiff's off-label marketing claims. Plaintiff claims Naranjo testified—and other Confidential Witnesses alleged—that "'spreadsheets' and 'calculators' were 'given to us by the marketing department and the financial experts in the company on how to promote the product—how to show physicians a spread, a profitability, between Aranesp and Procrit and making a direct comparison, which was against guidelines by Medicare and Medicaid. . . .'" Motion at 6:24–7:30. Even if true, there is no evidence that these "spreadsheets" and "calculators" concern off-label marketing claims. The "spreadsheets" and "calculators" related to sales, Medicare pricing, hospital outpatient costs, and profit-related information—*not* any supposed marketing of products for unapproved indications. Kramer Decl. at ¶ 5, Ex. 4 (Naranjo Depo. at 87:6-23; 202:25-203:19; 205:7-206:11).

In short, Naranjo does not support and cannot speak for Confidential Witnesses 2-5. Plaintiff has not satisfied its burden of providing competent evidence common to the class of any company-wide off-label marketing. In fact, the only evidence in this case shows that Amgen strictly prohibited off-label marketing and took appropriate corrective action in the one instance relayed by Naranjo, which itself was based on hearsay.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## IV. CONCLUSION

For the reasons stated above, the Court should strike the references to the allegations attributed to Confidential Witnesses 2-5 from Footnote 9 of Plaintiff's Motion, as well as from the Complaint.

Dated: April 29, 2009

MAYER BROWN LLP

By: *Steven Kramer*
Steven O. Kramer
Attorneys for Defendants
AMGEN INC., KEVIN W. SHARER, RICHARD D. NANULA, ROGER M. PERLMUTTER and GEORGE J. MORROW