O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

#3

## CIVIL MINUTES - GENERAL

| Case No. | CV 07-2536 PSG (PLAx) | Date | August 12, 2009 |
|---|---|---|---|
| Title | Connecticut Retirement Plans and Trust Funds v. Amgen, Inc. | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge |
|---|---|

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:     (In Chambers) Order Granting Plaintiff's Motion for Class Certification**

Pending before the Court is Plaintiff's Motion for Class Certification.  The Court heard oral argument on this matter on July 13, 2009.  After considering the submissions and arguments of counsel, the Court GRANTS Plaintiff's Motion for Class Certification.

I.     <u>Background</u>

This securities fraud action alleges claims against Amgen, Inc. ("Amgen") and certain of its directors and officers (collectively, "Defendants") under section 10 and 20(a) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder.[1]  The case is brought on behalf of a class of purchasers of the publicly traded securities who bought their shares between April 22, 2004 and May 10, 2007, inclusive (the "Class Period").

Put simply, Lead Plaintiff Connecticut Retirement Plans and Trust Funds ("Plaintiff") alleges that Defendants made a series of materially false and misleading statements and omissions during the Class Period which artificially inflated the value of Amgen's stock. Plaintiff further alleges that later "partial corrective disclosures" caused the stock price to decline, causing it and the Class injury.

More specifically, this case concerns alleged misrepresentations and omissions relating to two of Amgen's better known products: Epogen® (epoetin alfa) ("Epogen") and Aranesp®

---

[1] A more detailed overview of the factual background of this case is discussed in the Court's February 1, 2008 Order Granting in Part and Denying in Part Defendants' Motion to Dismiss, familiarity with which is assumed.  *See* Dkt. # 137.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
#3
CIVIL MINUTES - GENERAL

| Case No. | CV 07-2536 PSG (PLAx) | Date | August 12, 2009 |
|---|---|---|---|
| Title | Connecticut Retirement Plans and Trust Funds v. Amgen, Inc. | | |

(darbepoetin alfa) ("Aranesp"). In 1989, the Food and Drug Administration ("FDA") approved Epogen for the treatment of anemia associated with chronic renal failure, including end stage renal disease patients and patients on dialysis. *CAC* ¶ 37. Later, the FDA approved Epogen for persons who develop anemia as a consequence of chemotherapy for cancer, treatment of HIV infections with the pharmaceutical zidovudine, chronic kidney disease in pre-dialysis patients, and anemic patients scheduled to undergo elective, non-cardiac, non-vascular surgery. *Id.* at ¶ 38. The FDA also approved Aranesp for certain purposes. For example, in 2001, Amgen secured FDA approval to market Aranesp for the treatment of anemia associated with chronic renal failure, including patients on dialysis and those not on dialysis. *Id.* at ¶ 42. Then, in 2002, the FDA approved Aranesp for the treatment of anemia associated with cancer chemotherapy. *Id.*

According to Plaintiff, the first actionable statement made by Defendants occurred during an earnings conference call on April 22, 2004. That day, defendant George Morrow ("Morrow")[2] discussed an upcoming meeting the FDA had convened with a group of leading experts in the field of oncology known as the Oncology Drug Advisory Committee ("ODAC"). *Id.* at ¶ 58. The purpose of this meeting was to look into the safety of Aranesp and other Erythopoiesis Stimulating Agents ("ESAs").[3] *Id.* When asked about the upcoming meeting, Morrow allegedly "downplayed the significance of the meeting and the safety concerns of the FDA," telling analysts that Amgen "had decided to participate in that meeting 'cause the focus was not on Aranesp . . . [and] there is no signal associated with Aranesp. We've had two perspective randomized placebo controlled trials. And the safety for Aranesp has been comparable to placebo." *Id.* at ¶ 59. Plaintiff contends, however, that these statements were both actionable misstatements and omissions because the ODAC meeting had in fact been convened to assess the safety of Epogen and Aranesp.

Plaintiff also claims that Defendants knowingly concealed material information concerning a clinical trial that tested whether high doses of Aranesp could aid in shrinking tumors of patients with head and neck cancer receiving radiation therapy. *Id.* at ¶ 64. Known as the DAHANCA 10 trial, DAHANCA investigators temporarily halted the study in October of 2006 "due to information about potential unexpected negative effects related to immunohistochemical estimation of the so-called EPO receptor." *Id.* Then, on December 1, 2006, DAHANCA investigators terminated the study entirely. *Id.* at ¶ 65. According to the

_____

[2] Morrow was, at all relevant times, Amgen's Executive Vice President of Global Commercial Operations. *Id.* at ¶ 19.
[3] Both Epogen and Aranesp are ESAs.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
## #3
## CIVIL MINUTES - GENERAL

| Case No. | CV 07-2536 PSG (PLAx) | Date | August 12, 2009 |
|---|---|---|---|
| Title | Connecticut Retirement Plans and Trust Funds v. Amgen, Inc. | | |

DAHANCA Interim Analysis, "there is a small but significant poor outcome in the patients treated with Aranesp" in that the tumor growth was worse for patients who took Aranesp than for those who did not. *Id.* However, despite knowing in mid-October 2006 that DAHANCA 10 had been temporarily halted, and knowing by December 2006 that the study had been terminated early, Amgen allegedly never fully informed investors of these developments. *Id.* at ¶ 4. In fact at least according to Plaintiff, investors did not become informed of these results until February 16, 2007, at which time a newsletter called *The Cancer Letter* reported that the DAHANCA 10 trial had been halted in October 2006 because it showed "significantly inferior therapeutic outcome from adding Aranesp to radiation treatment of patients with head and neck cancer." *Id.* at ¶ 66.

In addition to the foregoing, Plaintiff alleges more generally that throughout the Class Period, Defendants repeatedly touted the on-label safety of Epogen and Aranesp, despite knowing that there were serious concerns regarding their safety. For instance, on March 9, 2007, Amgen issued a statement in which it stated that both drugs have "favorable risk/benefit profiles." *Id.* at ¶ 146. Weeks later, during a conference call with Wall Street Analysts, defendant Kevin Sharer ("Sharer")[4] stated: "The overwhelming conclusion that – that I reach and others have reached in looking at all that data is that on label our drugs are certainly safe." *Id.* at ¶ 147. In Plaintiff's view, these statements improperly downplayed negative clinical trials that demonstrated exactly how unsafe Epogen and Aranesp really were.

Allegedly, due to Defendants' systematic misrepresentations and omissions, investors did not become fully aware of the safety risks of these drugs until May 10, 2007, the day the Class Period ends. It was only then that the corrective disclosures leading to and made at the 2007 ODAC Meeting fully disclosed the falsity and misleading nature of Defendants' prior representations. In relevant part, these disclosures included the following: the already discussed newsletter published in *The Cancer Letter* on February 16, 2007; a February 28, 2007 Amgen announcement that the Securities and Exchange Commission ("SEC") was investigating it with regard to the DAHANCA 10 trial; a March 9, 2007 FDA announcement that the FDA would mandate a black box warning for ESAs, including Aranesp and Epogen; and the May 10, 2007 ODAC vote to place greater restrictions on the use of ESAs. *See CAC* ¶¶ 202-07.

Lastly, Plaintiff alleges that Amgen's statements concerning its sales practices and market growth potential constituted a fraud on investors for another reason: they promoted Aranesp and

---

[4] Sharer was, at all relevant times, Amgen's Chief Executive Officer and Chairman of the Board of Directors. *Id.* at ¶ 14.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### #3
### CIVIL MINUTES - GENERAL

| Case No. | CV 07-2536 PSG (PLAx) | Date | August 12, 2009 |
|---|---|---|---|
| Title | Connecticut Retirement Plans and Trust Funds v. Amgen, Inc. | | |

Epogen for unapproved uses and increased per-patient dosages through improper and unlawful means. More specifically, Plaintiff claims that at the same time the FDA was questioning whether ESAs were safe for approved indications and populations, Amgen developed a sophisticated and multifaceted scheme to improperly push the ESAs for unapproved indications and populations, even though Amgen publicly stated that it "only promotes the use of Epogen and Aranesp consistent with the FDA label." *CAC* ¶¶ 81, 84, 103.

Presently, Plaintiff has filed a motion for class certification, to which Defendants have filed an opposition. Additionally, Defendants have filed evidentiary objections and a request to strike, to which Plaintiff has filed a response.

II.   Legal Standard

A court may certify a class if a plaintiff has met all the prerequisites of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b). *See* Fed. R. Civ. P. 23; *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). The burden lies with the plaintiff to establish that these requirements have been met. *Zinser v. Accufix Res. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

Under Rule 23(a), a plaintiff must demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representatives are typical of the claims or defenses of the class; and (4) the class representatives will fairly and adequately protect the interests of all members of the class. Fed. R. Civ. P. 23(a). If all four prerequisites of Rule 23(a) are satisfied, a plaintiff also must establish that one or more of the grounds for maintaining the suit under Rule 23(b) are met, including: (1) that there is a risk of substantial prejudice from separate actions; (2) declaratory or injunctive relief benefiting the class as a whole would be appropriate; or (3) common questions of law or fact predominate, and the class action is superior to other available methods of adjudication. Fed. R. Civ. P. 23(b).

In determining whether to certify a class action, a court may not conditionally certify an improper class on the basis of a speculative possibility that it may later meet the requirements of Rule 23. *In re Hotel Tel. Charges*, 500 F.2d 86, 90 (9th Cir. 1974). "However, neither the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies the Rule." *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975). Put otherwise, in conducting a class certification analysis,

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**#3**
**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2536 PSG (PLAx) | Date | August 12, 2009 |
|---|---|---|---|
| Title | Connecticut Retirement Plans and Trust Funds v. Amgen, Inc. | | |

courts are not to ask whether the plaintiffs will prevail on the merits, but, rather, they are to ask whether the plaintiffs have met the requirements of Rule 23. *See Staton v. Boeing Co*., 327 F.3d 938, 954 (9th Cir. 2003) ("Although some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a), it is improper to advance a decision on the merits to the class certification stage."); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974).

In making this determination, a court is bound take the substantive allegations of the complaint as true. *Blackie*, 524 F.2d at 901 n.17; *see also In re Petroleum Prods. Antitrust Litig*., 691 F.2d 1335, 1342 (9th Cir. 1982). Nevertheless, "[w]hile the court may not put the plaintiff to preliminary proof of his claim, it does require sufficient information to form a reasonable judgment." *Blackie*, 524 F.2d at 901 n.17. Moreover, a court must be mindful that to safeguard due process interests and the judicial process, it must conduct as "rigorous" an analysis as is necessary to determine whether class certification is appropriate. *See Chamberlan v. Ford Motor Co*., 402 F.3d 952, 961 (9th Cir. 2005); *see also Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982).

III.    Plaintiff's Motion for Class Certification

According to Plaintiff, not only can it satisfy the four "prerequisites" of Rule 23(a), it can also establish that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3). In opposition to this motion, Defendants make three arguments. First, they argue that Plaintiff cannot satisfy the adequacy requirement found at Rule 23(a)(4).[5] Second, it is their position that individual questions of fact predominate over common questions of fact and, therefore, Plaintiff cannot satisfy Rule 23(b)(3). Lastly, they contend that Plaintiff has not adequately established the Class Period.

A.    Rule 23(a) Analysis

The Court begins by analyzing whether Plaintiff has satisfied the four "prerequisites" of Rule 23(a). For a named plaintiff to obtain class certification, a court must find:

---

[5] Defendants do not argue that Plaintiff is unable to establish the other three "prerequisites" of Rule 23(a).

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
## #3
## CIVIL MINUTES - GENERAL

| Case No. | CV 07-2536 PSG (PLAx) | Date | August 12, 2009 |
|----------|------------------------|------|-----------------|
| Title    | Connecticut Retirement Plans and Trust Funds v. Amgen, Inc. | | |

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Each of these requirements is evaluated in turn.

      1.    <u>Numerosity</u>

A proposed class meets Rule 23(a)'s numerosity requirement when "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  No exact numerical cut-off is required; rather, the specific facts of each case must be considered.  *Gen. Tel. Co. of Nw., Inc. v. E.E.O. C.*, 446 U.S. 318, 330, 100 S. Ct. 1698, 64 L. Ed. 2d 319 (1980).

Here, it is undisputed that the class is sufficiently numerous.  Not only has Plaintiff alleged that the class consists of "thousands of members," *CAC* ¶ 194, Plaintiff has in fact identified over 1,000 institutional investors that held Amgen shares throught the proposed class period.  *See McDonald Decl.* Ex. 7, at ¶ IV.7.  Plaintiff has also established that over 1 billion shares were outstanding during the proposed Class Period.  *Id.* at ¶ IV.5.  Thus, it can reasonably be inferred that thousands upon thousands of class members exist.

Also, the parties do not dispute that joinder of thousands of potential plaintiffs would be impracticable and infeasible.  In fact, it would most likely be both, particularly in light of other factors, such as the size of individual claims and the geographical dispersion of potential class members.  *See In re Unioil Securities Litigation*, 107 F.R.D. 615, 618 (C.D. Cal. 1985) (drawing a similar conclusion when presented with similar facts).  Accordingly, the Court finds that Rule 23(a)(1) is satisfied.

      2.    <u>Commonality</u>

Rule 23(a)(2) requires that class members' claims contain "questions of law and fact common to the class." Fed. R. Civ. P. 23(a)(2).  In general, a few factual variations among the

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
## #3
## CIVIL MINUTES - GENERAL

| Case No. | CV 07-2536 PSG (PLAx) | Date | August 12, 2009 |
|---|---|---|---|
| Title | Connecticut Retirement Plans and Trust Funds v. Amgen, Inc. | | |

class grievances will not defeat commonality so long as class members' claims arise from "shared legal issues" or "a common core of salient facts." *Staton*, 327 F.3d at 953.

Again, it is undisputed that this requirement is met. The legal claims at hand all involve the same basic legal claims: securities frauds. And these legal claims are based on the same nucleus of operative facts: the alleged misrepresentations and omissions relating to the events and clinical trials involving the safety of Amgen's ESAs. *See Schaefer v. Overland Express Family of Funds*, 169 F.R.D. 124, 128 (S.D. Cal. 1996) (finding Rule 23(a)(2) was met in a securities fraud case when the legal claims arose from common misrepresentations). In light of the foregoing, the Court finds that Rule 23(a)(2) is satisfied.

### 3.  Typicality

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). "'Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought.'" *Id.* (citation omitted). In determining whether the plaintiff has satisfied this requirement, courts look to see "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.*

Here, not only are Plaintiff's claims typical to those of other class members, they are in fact substantially identical. Like other class members, Plaintiff bought Amgen stock and sold it for investment purposes. These investment choices were dictated by representations made by Defendants that affected the market at large. Thus, resolving Plaintiff's claims and other class members' claims will require analysis of the same evidence. Additionally, there is nothing in the record that indicates that Plaintiff has a unique background or factual situation that would require it to prepare to meet defenses that are atypical of the defenses which may be raised against other members of the proposed class. *See Hanon*, 976 F.2d at 508 (finding that a named plaintiff failed to satisfy the typicality requirement because it was predictable that a major focus of the litigation would have been on a defense unique to him). In light of the foregoing, the Court finds that Rule 23(a)(3) is satisfied.

### 4.  Adequacy

Rule 23(a)(4) permits the certification of a class action only if "the representative parties

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### #3
### CIVIL MINUTES - GENERAL

| Case No. | CV 07-2536 PSG (PLAx) | Date | August 12, 2009 |
|----------|------------------------|------|-----------------|
| Title | Connecticut Retirement Plans and Trust Funds v. Amgen, Inc. | | |

will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine whether the representation meets this standard, courts ask two questions: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton*, 327 F.3d at 957 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Defendants make two arguments as to why Plaintiff cannot satisfy this requirement. First, they contend that because a so-called "equity conflict" exists in this case, Plaintiff is an inadequate representative to certain members in the Class.[6]  Second, they argue that since this case involves "partial curative disclosures," the Court should be "considerably more wary" of certifying the class than it would be in a full disclosure case. Each of these arguments is evaluated in turn.[7]

According to Defendants, Plaintiff does not adequately represent the class because there is a conflict between those individuals, like Plaintiff, that purchased stock during the Class Period and who have retained ownership of that stock (so-called "equity holders") and those class members who purchased and sold their shares during the Class Period (so-called "non-equity holders"). Defendants reason that Plaintiff's interests are antagonistic to those of non-equity holders because Plaintiff, as an equity holder, stands to lose more as a shareholder than it will gain as a class member if Amgen is required to pay damages to the Class.[8]  Thus, Defendants argue, Plaintiff has an interest in minimizing the overall liability of the company whereas the non-equity holders, on the other hand, would like to maximize the liability of the company, as doing so will increase their award of damages.

In support of their contention that this equity conflict should prevent certification, Defendants exclusively rely on a case from the Northern District of California, *Seagate II*. *See* 843 F. Supp. 1341. The *Seagate II* court found that "a conflict over price inflation was at the

---

[6] Other courts that have addressed this or a similar argument refer to this alleged conflict of interest as an "equity conflict." *See In re Tyco Intern., Ltd.*, 236 F.R.D. 62, 68-70 (D.N.H. 2006); *In re Dynegy, Inc. Sec. Litig.,* 226 F.R.D. 263, 277 (S.D. Tex. 2005); *In re HealthSouth Corp. Sec. Litig.,* 213 F.R.D. 447, 462 (N.D. Ala. 2003); *In re Seagate Tech. II Sec. Litig.*, 843 F. Supp. 1341, 1362-64 (N.D. Cal. 1994). For sake of uniformity, this Court follows suit.

[7] Defendants do not argue that Plaintiff is represented by inadequate counsel.

[8] In theory, this is because any such payment will result in a corresponding reduction in the company's stock price. *See In re Tyco Intern.*, 236 F.R.D. at 68 (explaining the underlying assumptions of the equity conflict argument).

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**#3**
**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2536 PSG (PLAx) | Date | August 12, 2009 |
|----------|----------------------|------|-----------------|
| Title | Connecticut Retirement Plans and Trust Funds v. Amgen, Inc. | | |

heart of the suit," (emphasis omitted) and that conflicts over the degree of price inflation, as might arise between purchasers with different trading histories or between purchasers who ultimately sold and those who did not, "are not only serious, but … are pervasive enough to threaten to preclude satisfaction of the adequacy of representation element of FRCP 23." *Id.* at 1358-59.  Thus, the court surmised, since an equity holder "may well seek to defeat the other class members' recoveries," his interests are undoubtedly antagonistic to those of the other class members, thus making him an inadequate representative.  *Id.* at 1364.

Over the years, a few courts have embraced *Seagate II* and its reasoning.  *See, e.g., O'Neil v. Appel*, 165 F.R.D. 479, 494 (W.D. Mich. 1996).  In the main, though, courts have rejected *Seagate II*, albeit for a variety of reasons.[9]  Some courts, for instance, have noted that equity conflicts are present in almost every large, complex securities case and that deeming those conflicts to be an appropriate basis for the denial of class certification would be inconsistent with the Court of Appeals' strongly favorable view of the class action device in securities cases generally.  *See In re Honeywell*, 211 F.R.D. at 261.  Other courts have, to put it simply, found *Seagate II*'s reasoning to be unpersuasive.  As one court aptly explained:

> [The Seagate II view] … overstates the importance of price inflation. The chief role of price inflation remains its function in determining each plaintiff's damages. The common questions with respect to whether misleading statements or omissions were made, whether such statements were material, and whether they were made with scienter, bind class members with more force than the varying questions related to price inflation drive them apart.

*In re Gaming Lottery Sec. Litig.*, 58 F. Supp. 2d 62, 69-70 (S.D.N.Y. 1999).  In a similar vein, lower courts have observed that *Seagate II* is in no small degree of tension with a prominent Ninth Circuit decision in this area of law: *Blackie*, 524 F.2d at 909.  *See, e.g., In re Regal Commc'ns Corp. Secs.*, 1995 WL 550454, at *8 (E.D. Pa. 1995).  In *Blackie*, the Ninth Circuit observed that, historically speaking,
courts have consistently declined "to consider conflicts, particularly as they regard damages,

---

[9] *See, e.g., In re Tyco Intern.*, 236 F.R.D. at 68-70; *In re Schering-Plough Corp. Sec. Litig.*, 2003 U.S. Dist. LEXIS 26297, at *24 (D.N.J. Oct. 9, 2003); *In re Honeywell Int'l, Inc. Sec. Litig.*, 211 F.R.D. 255, 261-62 (D.N.J. 2002) (noting that *Seagate II*'s reasoning has been rejected by an overwhelming majority of courts); *Welling v. Alexy*, 155 F.R.D. 654, 6643 (N.D. Cal. 1994); *Ziemack v. Centel Corp.*, 164 F.R.D. 477, 479 (N.D. Ill. 1995); *In re Mut. Sav. Bank. Sec. Litig.*, 166 F.R.D. 377, 384 (E.D. Mich. 1996) (citing other examples).

O

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
#### #3
### CIVIL MINUTES - GENERAL

| Case No. | CV 07-2536 PSG (PLAx) | Date | August 12, 2009 |
|---|---|---|---|
| Title | Connecticut Retirement Plans and Trust Funds v. Amgen, Inc. | | |

sufficient to defeat class action status at the outset unless the conflict is apparent, imminent, and on an issue at the very heart of the suit." *Blackie*, 524 F.2d at 909. Thus, in ruling as it did, *Seagate II* placed itself in no small degree of tension with a long line of authority that instructs lower courts to avoid handling damages issues at the class certification stage. *See id.*; *see also In re Safeguard Scientifics*, 216 F.R.D. 577, 581 (E.D. Pa. 2003) ("[W]e leave the issue of price inflation to the determination of damages and can address any potential buyer-seller conflicts with the use of subclasses."); *In re Gaming Lottery*, 58 F. Supp. 2d at 69-70 (observing that *Seagate II* is in tension with *Blackie*).

   This Court agrees with those courts that have held that an equity conflict does not represent a valid reason for refusing to certify a class. *See, e.g.*, *Blackie*, 524 F.2d at 908-10. The record shows that the antagonism that supposedly exists between equity holders and non-equity holders is not "at the very heart of the suit." *Id.* at 909. Rather, it is "peripheral" to the Class' "overriding common interest in establishing the existence and materiality of misrepresentations." *Id.* It bears repeating that, at its core, this case concerns misrepresentations and omissions made to the public at large. Other issues, such as the distribution of monetary relief, while undoubtedly important, are nevertheless subordinate to the main issue in this case – whether Defendants are liable under the securities laws. Thus, while class members may have competing interests in distributing the monetary relief, such interests are ultimately ancillary to their unified interest in establishing liability.

   The Court also finds that the presence of partial corrective disclosures does not render Plaintiff to be an inadequate class representative. Again, citing to *Seagate II*, Defendants appear to posit that as a result of partial corrective disclosures, there will be a difference in damages among class members. However, besides the fact that, as discussed above, now is an inappropriate time to delve into an inquiry regarding damages, *see Blackie*, 524 F.2d at 909, Defendants appear to miss a critical point of Plaintiff's claims. While Plaintiff alleges that several partial corrective disclosures occurred throughout the Class Period, Plaintiff is taking the position that it was not until the end of the Class Period that the market became *fully* aware of Defendants' misrepresentations and omissions. Put otherwise, since the partial disclosures of fraud did not fully reveal the truth, all class members were misled during the Class Period, albeit at differing degrees. Importantly, what is significant to the Court is not the degree to which Plaintiff was misled but whether it and the other class members were in fact misled. Consequently, the Court finds that any differences in the extent to which Plaintiff and other class members were misled is insufficient to preclude class certification.

   5.   <u>Conclusion</u>

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### #3
### CIVIL MINUTES - GENERAL

| Case No. | CV 07-2536 PSG (PLAx) | | Date | August 12, 2009 |
|----------|------------------------|---|------|-----------------|
| Title | Connecticut Retirement Plans and Trust Funds v. Amgen, Inc. | | | |

For the foregoing reasons, the Court finds that Plaintiff has satisfied all four "prerequisites" of Rule 23(a).

B.      Rule 23(b)

Next the Court considers whether Plaintiff has satisfied one of the requirements of Rule 23(b).  According to Plaintiff, it can establish that "questions of law or fact common to class members predominate over any questions affecting only individual members."  *See* Fed. R. Civ. P. 23(b).  However, Defendants disagree, reasoning that because the class claims sound in fraud, each individual will have to prove that they relied on the alleged actionable misrepresentations and omissions.  Consequently, they argue, since reliance is a highly individualized inquiry, class certification should be denied because individual questions regarding reliance will predominate over common questions.  *Basic, Inc. v. Levinson*, 485 U.S. 224, 242, 108 S. Ct. 978, 99 L. Ed. 2d 194 (1988) ("Requiring proof of individualized reliance from each member of the proposed plaintiff class effectively would have prevented respondents from proceeding with a class action, since individual issues then would have overwhelmed the common ones."); *see also Binder v. Gillespie*, 184 F.3d 1059, 1063 (9th Cir. 1999).

Now it is Plaintiff's position that reliance can be presumed in this case, which is why the Court can reject Defendants' argument that the individualized reliance inquiry precludes class certification.  However, whether reliance can be presumed in this case depends on whether Plaintiff can properly avail itself of what is commonly referred to as the "fraud-on-the-market" theory.  Formally adopted by the Supreme Court in *Basic*, the "fraud-on-the market" theory "is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business . . . .  Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements . . . ."  *Binder*, 184 F.3d at 1064 (quoting *Basic*, 485 U.S. at 241-42).  "Thus, the presumption of reliance is available only when a plaintiff alleges that a defendant made material representations or omissions concerning a security that is actively traded in an 'efficient market,' thereby establishing a 'fraud on the market.'"  *Binder*, 184 F.3d at 1064 (citing *Basic*, 485 U.S. at 247); This presumption of reliance can, however, be rebutted.  *Basic*, 485 U.S. at 248.

The parties disagree over exactly what type of showing Plaintiff must make in order for the presumption of reliance to be triggered.  According to Defendants, at the very least, Plaintiff must allege and prove the following:

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### #3
### CIVIL MINUTES - GENERAL

| Case No. | CV 07-2536 PSG (PLAx) | Date | August 12, 2009 |
|---|---|---|---|
| Title | Connecticut Retirement Plans and Trust Funds v. Amgen, Inc. | | |

(1) that the defendant made public misrepresentations; (2) that the misrepresentations were material; (3) that the shares were traded on an efficient market; (4) that the misrepresentations would induce a reasonable, relying investor to misjudge the value of the shares; and (5) that the plaintiff traded the shares between the time the misrepresentations were made and the time the truth was revealed.

*See Basic*, 485 U.S. at 248 n.27.  Defendants also urge the Court to follow a rule that the Fifth Circuit recently adopted in *Oscar Private Equity Invs. v. Allegiance Telecom, Inc.*, 487 F.3d 261 (5th Cir. 2007).  In that case, the Fifth Circuit held that a plaintiff may recover under the fraud-on-the-market theory only if she can "prove that the defendant's non-disclosure materially affected the market price of the security." *Id.* at 265.  In other words, plaintiffs must "establish loss causation in order to trigger the fraud-on-the-market presumption." *Id.*[10]

Plaintiff, on the other hand, contends that it has to make a substantially lesser showing. More specifically, Plaintiff argues that it need not prove the five elements listed by Defendants in their brief and found within a footnote in *Basic* (i.e., the "*Basic* footnote elements").  Not does it have to prove loss causation in order to trigger application of the presumption.  Rather, Plaintiff claims that it need only prove "market efficiency."[11]  Plaintiff also contends that it would be "legal error" if this Court inquired into issues that go to the heart of its claims, such as whether the alleged misrepresentations made by Defendants were material.

In any event, Defendants argue, even if Plaintiff need only prove that it purchased its

---

[10] "Loss causation" is a term used to describe the requirement that a private plaintiff who claims securities fraud must prove that the defendant's fraud in fact caused an economic loss.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 388, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) (citations omitted).

[11] Put simply, a market is efficient if the stock prices reflect public information.  *Binder*, 184 F.3d at 1065.  Although the Ninth Circuit has not articulated a specific test for market efficiency, it and district courts in this circuit have looked to the factors articulated in *Cammer v. Bloom*, 711 F. Supp. 1264, 1286-87 (D.N.J. 1989), which included both direct and indirect tests for efficiency.  *See, e.g., Binder*, 184 F.3d 1059; *In re Surebeam Corp. Sec. Litig.*, 2005 WL 5036360, *23 (S.D. Cal. 2005). These factors include (1) whether the stock trades at high weekly volume; (2) whether securities analysts follow and report on the stock; (3) whether the stock has market makers and arbitrageurs; (4) whether the company is eligible to file a Form S-3 registration statement with the SEC; and (5) whether there are empirical facts showing a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock rice.  *See Cammer*, 711 F. Supp. at 1286-87.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### #3
### CIVIL MINUTES - GENERAL

| Case No. | CV 07-2536 PSG (PLAx) | Date | August 12, 2009 |
|----------|----------------------|------|-----------------|
| Title | Connecticut Retirement Plans and Trust Funds v. Amgen, Inc. | | |

securities on an efficient market, Defendants can adequately rebut this presumption.

In resolving the dispute at hand, it is helpful to separate the analysis into three inquiries. First, is it necessary for Plaintiff to establish the *Basic* footnote factors in order to trigger the presumption?  Second, does Plaintiff have to prove loss causation to apply that presumption?  And, lastly, assuming the presumption applies, have Defendants presented adequate evidence to rebut the presumption?

### 1.    Triggering the Presumption

In support of their position that Plaintiff must establish the *Basic* footnote elements, Defendants point to the specific language the Supreme Court used in the *Basic* footnote: "The Court of Appeals held that in order to invoke the presumption, a plaintiff must allege *and prove*" five different elements.  *Basic*, 485 U.S. at 248 n.27 (emphasis added).  Seizing on the word "prove," Defendants contend that *Basic* requires Plaintiff to show much more than an efficient market.  In other words, Defendants read this footnote as a mandate.

Other courts, both within and outside of this circuit, have similarly interpreted *Basic*.  *See, e.g., Freeman v. Laventhol & Horwath*, 915 F.2d 193, 197 (6th Cir. 1990); *In re Cooper Cos., Inc. Sec. Litig.*, 254 F.R.D. 628, 638 (C.D. Cal. 2009).  Now while these interpretations are not in conflict with *Basic* (i.e., nothing in *Basic* tells lower courts that they *cannot* consider those five elements listed in the footnote), the Court nevertheless finds this interpretation to be unsupported by the language in the opinion.  Noticeably absent from the relevant footnote is any type of mandatory language, such as "must," that would otherwise compel lower courts to apply a five element test.  Also, it is significant that the footnote is not framed as a command or a directive.  Rather, it appears to be more of an observation, suggesting to lower courts an approach that they might, but need not, adopt when applying the presumption.

This Court's interpretation of *Basic* appears to be supported by two Ninth Circuit decisions, the first being *Binder*, 184 F.3d 1059.[12]  In *Binder*, the Ninth Circuit reviewed the

---

[12] Surprisingly, it appears that the Ninth Circuit has only twice considered what type of showing a plaintiff must make to trigger the presumption at the class certification stage.  This is not to say, however, that the Ninth Circuit has not addressed the fraud-on-the-market theory in other contexts.  Indeed, on numerous occasions the Ninth Circuit has addressed this theory at the summary judgment stage.  *See, e.g., Provenz v. Miller*, 102 F.3d 1478 (9th Cir. 1996); *Kaplan v. Rose*, 49 F.3d 1363 (9th Cir. 1994); *In re Apple Computer Sec. Litig.*, 886 F.2d 1114 (9th Cir. 1989).

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### #3
## CIVIL MINUTES - GENERAL

| Case No. | CV 07-2536 PSG (PLAx) | Date | August 12, 2009 |
|----------|------------------------|------|-----------------|
| Title | Connecticut Retirement Plans and Trust Funds v. Amgen, Inc. | | |

district court's decision to decertify the class through a certain time period because the plaintiff had failed to establish market efficiency. *Id.* at 1064. After explaining the assumptions underlying the fraud-on-the-market theory, the Ninth Circuit observed, "[T]he presumption of reliance is available only when a plaintiff alleges that a defendant made material representations or omissions concerning a security that is actively traded in an 'efficient market,' thereby establishing a 'fraud on the market.'" *Id.* Notably, while the Ninth Circuit uses the word "alleges," it is clear that a plaintiff actually needs to produce some evidence on this issue for later in its decision the Ninth Circuit reviewed the evidence proffered by the petitioner to support his argument that the market was in fact efficient and ultimately found that evidence to be insufficient. *See id.* at 1065.

If there was any doubt as to what type of showing was needed in order to make the presumption available, that doubt was laid to rest with the very recent unpublished decision of *Huberman v. Tag-It Pac., Inc.*, 314 Fed. Appx. 59 (9th Cir. 2009). In *Huberman*, the Ninth Circuit again took up the issue of whether a district court had properly applied the presumption at the class certification stage. This time, though, the Ninth Circuit found that the presumption was properly applied because "at this stage of the proceeding, Huberman satisfied Rule 23(b)(3)'s superiority requirement by presenting evidence that Tag-It traded on an efficient market, thereby establishing the application of the fraud-on-the-market presumption." *Id.* at *63. The court went on to explain:

> The fraud-on-the-market presumption is only available when the plaintiff demonstrates that the security which the defendant's allegedly fraudulent behavior concerned was actively traded in an efficient market.
>
> . . .
>
> Here, where Tag-It was traded on a national exchange and the stock prices reflected public information an efficient market is present. Therefore, the fraud-on-the-market presumption applies, eliminating the need for individual reliance by each class member.

*Id.* (internal citations omitted).

Noticeably absent from both *Binder* and *Huberman* is any discussion of the *Basic* footnote elements. Indeed, the analysis of this issue in both of these decisions is, to put it fairly, extremely limited.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**#3**
**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2536 PSG (PLAx) | Date | August 12, 2009 |
|---|---|---|---|
| Title | Connecticut Retirement Plans and Trust Funds v. Amgen, Inc. | | |

Importantly, in the past two years, at least two district courts in this circuit have concluded that once a plaintiff establishes that an efficient market existed, the presumption is triggered.  In *In re Connetics Corp. Sec. Litig.*, 2009 U.S. Dist. LEXIS 39914 (N.D. Cal. 2009), the district court, in response to very similar arguments that have been made here, found that "at this stage [i.e., the class certification stage], lead plaintiff need show *only* that it traded on an efficient market."  *Id.* at *19 (emphasis added).  Likewise, in *In re Micron Techs., Inc.*, 247 F.R.D. 627 (D. Idaho 2007), the district court, citing to *Binder*, observed that a plaintiff need "only" establish that the shares at issue were traded on an efficient market in order to trigger the presumption.  *Id.* at 633.[13]

The reasoning of the *Binder*, *Huberman*, *Connetics*, and *Micron* courts is consistent with well-established precedent that counsels against inquiries into the merits of a plaintiff's case at the class certification stage.  Since 1974, courts have been particularly careful not to analyze the merits of a lawsuit when presented with a motion for class certification.  That year, the Supreme Court famously stated, "We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."  *Eisen*, 417 U.S. at 177-78.  Now this Court recognizes that over the years the lower courts have refined the scope of review established by *Eisen*.  In fact, under controlling Ninth Circuit precedent, this Court is not only "at liberty to" but must "consider evidence which goes to the requirements of Rule 23 [at the class certification stage] even [if] the evidence may also relate to the underlying merits of the case."  *Hanon*, 976 F.2d at 509.  Nevertheless, the Court must do so only when the evidence goes to the requirements of Rule 23.  *Id.*  Here, this Court finds that the inquiries Defendants urge the Court to make do not concern the requirements of Rule 23, but instead concern the merits of the case.  Accordingly, delving into those issues is inappropriate at this time.

2.    *Oscar*

For similar reasons, the Court declines Defendants' invitation to adopt the rule of *Oscar*.  As another court recently noted, "*Oscar* has not been considered or adopted by the Ninth Circuit [and] [i]t is unlikely that it would be adopted in this Circuit because it misreads *Basic*."  *In re Micron Techs., Inc.*, 247 F.R.D. at 634.  This Court agrees.

---

[13] However, at least two other district courts have found that plaintiffs must establish the *Basic* footnote elements in order to trigger the fraud-on-the-market presumption.  *See In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 526 (N.D. Cal. 2009); *In re Cooper*, 254 F.R.D. at 639.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### #3
### CIVIL MINUTES - GENERAL

| Case No. | CV 07-2536 PSG (PLAx) | Date | August 12, 2009 |
|---|---|---|---|
| Title | Connecticut Retirement Plans and Trust Funds v. Amgen, Inc. | | |

Essentially, *Oscar* is premised on the *Basic* Court's discussion of how defendants can rebut the presumption of reliance. Towards the end of its opinion in *Basic*, the Supreme Court explained that "[a]ny showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance." *Basic*, 485 U.S. at 248. Subsequently, the Supreme Court went on to provide specific examples of what type of showing could sever the link. For instance, a showing that the "market makers" were privy to the truth would provide a sufficient basis for finding that the fraud had not been transmitted through the market. *Id.* The presumption would also not apply if a defendant could show that the plaintiff would have divested himself of his shares without relying on the integrity of the market. *Id.* at 249.

The Fifth Circuit interpreted *Basic* to require plaintiffs to prove at the class certification stage that "it is more probable than not" that the corrective disclosure – the revealing of the secret – made a "significant contribution to a price decline." *Oscar*, 487 F.3d at 270. In other words, in the Fifth Circuit, plaintiffs must prove loss causation to be entitled to class certification. *Id.* However, as other courts have noted, this interpretation is actually contradicted by *Basic*.[14] In the heart of the Supreme Court's discussion of what type of showing a defendant can make to rebut the presumption, the Supreme Court drops a crucial footnote, in which it states that "[p]roof of this sort is a matter for trial . . . ." *Basic*, 485 U.S. at 245 n.29. Thus, as one court aptly put it:

> An accurate reading of *Basic* places a requirement on plaintiffs, at the class certification stage, to show that the market was efficient. The plaintiffs' proffer of evidence concerning efficiency must be rigorously examined by the Court before finding that they are entitled to a presumption of reliance. While defendants are entitled to rebut that presumption, that issue is appropriate for resolution only after discovery.

*In re Micron Techs., Inc.*, 247 F.R.D. at 634.

In summary, the Court agrees with Plaintiff that to trigger the presumption of reliance, Plaintiff need only establish that an efficient market exists. Other inquiries into issues such as

---

[14]A number of courts outside the Fifth Circuit have considered *Oscar* and declined to follow it. *See, e.g., In re LDK Solar Sec. Litig.* 584 F. Supp. 2d 1230, 1251 (N.D. Cal. 2008); *In re Credit Suisse-AOL Sec. Litig.,* 253 F.R.D. 17, 29 (D. Mass. 2008); *In Re Nature's Sunshine Prods. Inc. Sec. Litig.,* 251 F.R.D. 656, 665 (D. Utah 2008) (citing other examples).

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### #3
### CIVIL MINUTES - GENERAL

| Case No. | CV 07-2536 PSG (PLAx) | Date | August 12, 2009 |
|---|---|---|---|
| Title | Connecticut Retirement Plans and Trust Funds v. Amgen, Inc. | | |

materiality and loss causation are properly taken up at a later stage in this proceeding.

On this note, it appears that there is in fact no dispute as to whether Plaintiff has established that an efficient market exists.  Indeed, not only have Defendants admitted that "the market for Amgen securities was an efficient market," *compare CAC* ¶ 199 *with Defs.' Answer and Affirmative Defenses* at 199 (Dkt. #149), but Plaintiff has also met the aforementioned *Cammer* factors through the report of its expert, Scott D. Hakala, which Defendants do not challenge.[15]  *See McDonald Decl.* Ex. 7.  Accordingly, because Plaintiff has established that it purchased its securities on an efficient market, it is entitled to a presumption of reliance.

　　　　3.　　Rebuttal

Defendants also contend that assuming the presumption applies in this case, they can adequately rebut that presumption by showing that the "truth" was known to the market. Although unclear from their briefs, it appears that Defendants want to apply a principle that some courts have termed the "truth-on-the-market" doctrine.  *Provenz*, 102 F.3d at 1492.  The "truth-on-the-market" doctrine essentially maintains that in a fraud-on-the-market case, "an omission is materially misleading only if the information has not already entered the market."  *In re Convergent Techs. Sec. Litig.*, 948 F.2d 507, 513 (9th Cir. 1991) (citing *Apple Computer*, 886 F.2d at 1114).  As the Ninth Circuit has explained, "[i]f the market has become aware of the allegedly concealed information, 'the facts allegedly omitted by the defendant would already be reflected in the stock's price' and the market 'will not be misled.'"  *Id*. (quoting *Apple Computer*, 886 F.2d at 1114).

Defendants argue that they can adequately rebut the presumption as it relates to three different time periods, the first of which is the time period between April 22, 2004 and December 1, 2006.[16]  According to Defendants, during this time period, the market was well aware of the "truth" that there were serious safety concerns with regard to Amgen's ESAs.  In support of this contention, Defendants point to an announcement made by the FDA in March 2004 that it was convening a meeting with the ODAC in May of that year to discuss, among

---

[15] The Court notes that Defendants do not dispute Hakala's qualifications to opine on market efficiency, but reserve their right to challenge his qualifications to opine on other issues.

[16] April 22, 2004 is the commencing date of the Class Period and the day when Morrow allegedly "downplayed the significance of the [upcoming 2004 ODAC] meeting and the safety concerns of the FDA."  *CAC* ¶ 58.  December 1, 2006 is the date when the DAHANCA 10 investigators terminated the study entirely.  *Id.* at ¶ 65.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
### #3
## CIVIL MINUTES - GENERAL

| Case No. | CV 07-2536 PSG (PLAx) | Date | August 12, 2009 |
|---|---|---|---|
| Title | Connecticut Retirement Plans and Trust Funds v. Amgen, Inc. | | |

other things, "safety concerns associated with ARANESP (darbepoetin alfa) Amgen, Inc. and PROCRIT (epoetin alfa) Ortho Biotech, L.P." Defendants argue that this announcement, as well as the May 4, 2004 ODAC Meeting itself, served to inform the market that there were safety concerns with respect to Aranesp. As evidence of the market's awareness, Defendants point to a sample of analyst reports issued on May 5, 2004, in which the analysts discuss the ODAC Meeting. *See, e.g.,* RJN Ex. 13 (Banc of America report); RJN Ex. 15 (Lehman Bros. report).

Defendants also claim that they can rebut the presumption as it applies to the period of time between December 1, 2006 and February 16, 2007, otherwise known by the parties as "the DAHANCA period." According to Plaintiff, the DAHANCA period holds relevance in this case because it encompasses the period between when Defendants first learned of the termination of the DAHANCA 10 study (December 1, 2006) and the time *The Cancer Letter* published an article regarding the DAHANCA results (February 16, 2007). This latter event, according to Plaintiff, was the first time the negative results of the DAHANCA 10 study became public. However, Defendants argue that news of the termination of the study was already accessible on the Internet and, therefore, the public could not have been misled since the alleged misstatement and omission were already in the public forum. *See McDonald Decl.* Ex. 3 (*The Cancer Letter* Article) ("[E]ven informed observers have been largely unaware that the Danish study was temporarily stopped on Oct. 18, 2006, and that the decision not to resume the study was made on Dec. 1, 2006, and posted on the Web by the principal investigator, Jens Overgaard.").

Lastly, Defendants argue that they can rebut the presumption as it applies to the time period between February 16, 2007 and May 10, 2007, the date on which ODAC voted to recommend that additional restrictions be placed on the use of Amgen's ESAs. *See* RJN Ex. 75. Defendants point to certain disclosures they made after *The Cancer Letter* published the article about the termination of the DAHANCA 10 study. For example, on February 28, 2007, Amgen announced that it had been contacted by the SEC regarding the DAHANCA 10 study, and that it had been invited to participate in the May 10, 2007 ODAC meeting. *See* RJN Ex. 48 (Amgen press release). That same day, Defendants also announced that Amgen was "in discussions with the FDA" regarding a "boxed warning" for Amgen's ESA products. *See id.* Just two weeks after making these announcements, the FDA released a statement that it would require a boxed warning for Aranesp and Epogen. *See* RJN Ex. 66 (FDA news release). As Defendants see it, all of these disclosures are evidence that by the time of the May 10, 2007 ODAC Meeting, the market was well aware of all concerns discussed at the meeting.

Plaintiff takes issue with Defendants' contentions for essentially two reasons. First and foremost, Plaintiff argues that while Defendants do have an opportunity to rebut the

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### #3
## CIVIL MINUTES - GENERAL

| Case No. | CV 07-2536 PSG (PLAx) | Date | August 12, 2009 |
|---|---|---|---|
| Title | Connecticut Retirement Plans and Trust Funds v. Amgen, Inc. | | |

presumption, they may only do so at a stage in the proceedings after class certification. Second, Plaintiff contends that the "truth-on-the-market" doctrine cannot be applied because Defendants cannot prove that the information that was withheld or misrepresented was "'transmitted to the public with a degree of intensity and credibility sufficient to effectively counterbalance any misleading impression created by insider's one-sided representations.'" *Kaplan*, 49 F.3d at 1376 (quoting *Apple Computer*, 886 F.2d at 1116). In other words, Plaintiff is arguing that the truth was not in fact on the market.

On review, the Court agrees with Plaintiff that now is an inappropriate time to consider Defendants' contentions. As noted above, when explaining exactly how a defendant could rebut the presumption of reliance in a fraud on the market case, the Supreme Court provided several examples of sufficient showings. *Basic*, 485 U.S. at 249. However, immediately after providing these examples, the Supreme Court noted that proof of these examples "is a matter for trial." *Id.* at 249 n.29. Now in the years since *Basic* was first decided, it has become clear that, at least in this circuit, defendants can indeed rebut the presumption at the summary judgment stage. *See, e.g., Hanon*, 976 F.2d at 506-07. However, Defendants have failed to point this Court to one Ninth Circuit decision wherein the Ninth Circuit approved of a lower court's decision to analyze the evidence proffered by a defendant to rebut the presumption. To a degree, this does not come as a surprise to the Court. After all, it has long been established in this circuit that "the defense of non-reliance is not a basis for denial of class certification." *See id.* at 508 (citing *Blackie*, 524 F.2d at 901 n.17; *In re Pizza Time Theatre Sec. Litig.*, 112 F.R.D. 15, 22 (N.D. Cal. 1986)). Thus, if this Court was to allow Defendants to present evidence that none of the investors were misled because the truth was on the market, the Court would essentially be allowing Defendants to assert a defense of non-reliance as a basis for denial of class certification. But such is not allowed. *See Hanon*, 976 F.2d at 506-07.

### 4.    Superiority

Having decided that common questions of fact and law predominate over individual questions, the Court must now decide whether class resolution is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Clearly, it is. In this case, the alternative methods of resolution are individual claims for damages that may likely be outweighed by the costs of litigation. Thus, absent a class action, it is unlikely that many of the class members would prosecute their claims.

The parties also appear to agree that there are presently no management or administration issues that would cause difficulties going forward or at trial. If anything, the judicial system

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
## #3
## CIVIL MINUTES - GENERAL

| Case No. | CV 07-2536 PSG (PLAx) | Date | August 12, 2009 |
|---|---|---|---|
| Title | Connecticut Retirement Plans and Trust Funds v. Amgen, Inc. | | |

would suffer greater strain if this Court was to deny certification, as there is a possibility that the judicial system would become inundated with thousands of identical complaints.

For the foregoing reasons, the Court finds that class resolution is indeed "superior to other available methods for the fair and efficient adjudication of the controversy."

C.      Class Period

Lastly, the Court considers Defendants' argument that the Court should deny certification because there is no basis for the Class Period.  This argument can be rejected for the same reasons that the Court rejected Defendants' other arguments in this case—namely, Defendants, in direct contravention of a long line of authority, are attempting to improperly advance a decision on the merits to the class certification stage.  *See Staton*, 327 F.3d at 954 ("[I]t is improper to advance a decision on the merits to the class certification stage.").  As many other district courts have held, evidentiary disputes concerning the commencement and termination dates of a proposed class period raise questions of fact going to the merits of the case, and are therefore not a proper subject for inquiry at the certification stage.  *See, e.g., In re Cooper*, 254 F.R.D. at 640; *In re Unioil*, 107 F.R.D. at 621; *In re SciMed Secs. Litig.*, 1993 WL 616692 (D. Minn. Sept. 29, 1993); *Weinberger v. Thornton*, 114 F.R.D. 599, 605 (S.D. Cal. 1986); *In re Victor Techs. Sec. Litig.*, 102 F.R.D. 53, 58 (N.D. Cal. 1984) ("Examining whether a document issued during the proposed class period 'effectively cured' an alleged earlier misrepresentation calls for . . . a proscribed inquiry into the merits.").

In summary, the issue of the appropriate commencement and termination dates for the class period can be resolved only by an inquiry into the merits of the suit, which is prohibited at this stage in the proceedings.  Accordingly, the Court finds that Plaintiff has sufficiently established the Class Period.

IV.     Defendants' Evidentiary Objections and Request to Strike

In addition to opposing Plaintiff's motion for class certification, Defendants have also filed evidentiary objections and a request to strike the references to allegations attributed to certain confidential witnesses from footnote 9 of Plaintiff's motion, as well as from Plaintiff's complaint.  These allegations concern the off-label marketing scheme allegedly implemented by Defendants.

According to Plaintiff, Amgen, through press releases, repeatedly stated that it only

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### #3
## CIVIL MINUTES - GENERAL

| Case No. | CV 07-2536 PSG (PLAx) | Date | August 12, 2009 |
|---|---|---|---|
| Title | Connecticut Retirement Plans and Trust Funds v. Amgen, Inc. | | |

promoted the use of its ESAs consistent with the FDA label.  However, Plaintiff alleges that Amgen had in fact developed a sophisticated and multifaceted scheme to improperly push the ESAs for unapproved indications and populations.[17]  *CAC* ¶¶ 81, 84.  This scheme included, among other things: (1) training Amgen sales representatives to prompt doctors to ask questions that would permit them to begin the off-label dialog regarding Aranesp and Epogen, *id.* at ¶ 85; (2) creating a "speakers program" to boost off-label sales, wherein Amgen hired "expert" speakers to talk about off-label uses of Aranesp to physicians and other medical service providers, who received a $1,000 honorarium "paid from marketing budget" upon Amgen's receipt of their program evaluations, *id.* at ¶ 89; (3) soliciting business by marketing increased drug dosages, such as encouraging doctors to inject Epogen intravenously rather than subcutaneously, which requires a smaller dose to achieve the same therapeutic effect*, id.* at ¶¶ 92-93; (4) marketing Epogen and Aranesp to physicians and other medical service providers, by explicitly discussing the financial benefits of prescribing high volumes of these drugs, in violation of Medicare regulations, *id.* at ¶ 100; and (5) providing spreadsheets and other tools to enable sales representatives to calculate "margin and spread," *i.e.* the profit that a medical practice could earn by using particular Amgen drugs in combination.  *Id.* at ¶ 101.  These allegations were originally provided by five confidential witnesses.  Later, though, the identity of one of these witnesses, Diego E. Naranjo ("Naranjo") was disclosed to Defendants.

According to Defendants, Plaintiff breached an agreement to not rely on the allegations of the unidentified confidential witnesses in prosecuting its motion for class certification by relying on these witnesses' allegations in footnote 9 of page 7 of its moving papers.  In light of this, Defendants argue, the Court should not consider any allegations or claims attributed to the unidentified confidential witnesses.  Defendants also request that the Court strike footnote 9 and the off-label marketing allegations in the complaint altogether.

In support of its position, Defendants cite to a letter written by Plaintiff's counsel and addressed to Defendants' counsel.  In this letter, Plaintiff's counsel writes:

[I] will restate [our position] to more clearly account for defendants' requested bifurcation of the issue: plaintiff will not rely on CWs 2 through 5 for purposes of filing its initial papers in support of class certification.  If defendants forbear from seeking to identify, depose and use testimony by CWs 2 through 5 at the class

---

[17]The FDA does not prohibit physicians from prescribing drugs for unapproved, off-label uses. However, drug companies may provide information regarding off-label uses *only* in response to physician inquiries.

**O**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### #3
### CIVIL MINUTES - GENERAL

| Case No. | CV 07-2536 PSG (PLAx) | Date | August 12, 2009 |
|---|---|---|---|
| Title | Connecticut Retirement Plans and Trust Funds v. Amgen, Inc. | | |

certification stage, plaintiff will not rely on CWs 2 through 5 in its reply papers either.

*Kramer Decl.* Ex. 3.  However, what Defendants fail to point out is that Plaintiff's counsel continues:

> Your draft letter-agreement also seeks confirmation that plaintiff will not "rely" on "any allegations attributed to" CWs 2 through 5 for purposes of seeking class certification.  The only extent to which Plaintiff intends to rely on the Complaint's marketing-related allegations is in connection with plaintiff's argument to the Court that they present common questions that make class treatment appropriate.

*Id.*

Defendants' objection and request is based on the premise that Plaintiff supposedly "promise[d] *not* to rely on Confidential Witnesses 2-5" while moving for class certification *Defs.'s Brief* at 4.  However, as Plaintiff correctly points out, it never promised any such thing. Indeed, in his letter, Plaintiff's counsel unequivocally states that Plaintiff was in fact planning on relying on these allegations, albeit only "in connection with plaintiff's argument to the Court that they present common questions that make class treatment appropriate."  *See Kramer Decl.* Ex. 3. Thus, the premise on which Defendants' base their objections and request is faulty.

So too is the premise of another argument made by Defendants.  Essentially, Defendants believe that Plaintiff has not produced enough evidence to demonstrate that Defendants did in fact engage in unlawful off label marketing schemes, which, according to Defendants, is sufficient reason to deny the motion for class certification in that respect.  But, again, Defendants misunderstand the showing that Plaintiff needs to make at this stage in the proceedings.  Plaintiff has introduced evidence that Defendants represented that they did *not* engage in such unlawful practices.  That evidence, when combined with the allegations in the complaint – allegations which this Court must take as true at this stage in the proceedings, *see Blackie*, 524 F.3d at 901 – is sufficient to move Plaintiff past the class certification stage.[18]

---

[18] Of course, assuming that these allegations cannot be substantiated, then certainly Plaintiff's claims of off-label marketing policies will fail.  However, questions of that sort, i.e., questions that go to the merits of a claim, are properly addressed at a later stage in the proceeding.

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
**#3**
### CIVIL MINUTES - GENERAL

| Case No. | CV 07-2536 PSG (PLAx) | Date | August 12, 2009 |
|---|---|---|---|
| Title | Connecticut Retirement Plans and Trust Funds v. Amgen, Inc. | | |

For the foregoing reasons, the Court rejects Defendants' request to strike the references to the allegations attributed to the unidentified confidential witnesses from footnote 9 of Plaintiff's motion, as well as from the complaint.

IV.     Conclusion

Based on the foregoing, the Court GRANTS Plaintiff's Motion for Class Certification.

**IT IS SO ORDERED.**