UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 7-2536 PSG (PLAx) | Date | October 25, 2016 |
| Title | In re Amgen Inc. Securities Litigation | | |

| | |
|---|---|
| Present: The Honorable | Philip S. Gutierrez, United States District Judge |

| | |
|---|---|
| Wendy Hernandez | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):** **Order GRANTING Class Representative's Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation, and GRANTING Class Counsel's Motion for Attorneys' Fees and Payment of Expenses**

Before the Court are Class Representative's Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation, and Class Counsel's Motion for an Award of Attorneys' Fees and Payment of Expenses. Dkts. # 589, 590. Class Counsel has also provided the Court with a Reply Memorandum and supplemental declarations that describe letters received from class members regarding the settlement. *See* Dkts. # 594, 595, 596. The Court held a final fairness hearing in this matter on October 25, 2016. Having considered the arguments in all of the submissions, the Court GRANTS Class Representative's Motion for Final Approval and Class Counsel's Motion for Attorneys' Fees and Expenses.

## I. Background

In this class action lawsuit, Plaintiff Connecticut Retirement Plans and Trust Funds ("Plaintiff," "Class Representative," or "Connecticut Retirement") alleged that Amgen, a Fortune 200 global biotechnology company, along with a number of its officers and directors, violated sections 10(b) and 20(a) of the Securities Exchange Act of 1934, U.S.C. §§ 78j(b) and 78t(a), by making a series of misleading statements and omissions that artificially inflated the value of Amgen stock during the class period. Specifically, Plaintiffs asserted that Defendants misled investors concerning the safety of two of Amgen's flagship products: Aranesp® (darbepoetin alfa) and Epogen® (epoetin alfa).

The parties litigated this case for nine years. In that time, they exchanged extensive discovery, including more than 22 million pages of documents, thirty-six expert reports, seventy interrogatories, and 150 requests for admission. *See Class Representative's Motion for Final Approval of Class Action Settlement* ("*Mot. for Final Approval*"), Dkt. # 589, 7:8-14; 18:24-26.

The parties also litigated the Court's class certification order to the U.S. Supreme Court—an appeal that clarified the law and established that proof of materiality is not a prerequisite to class certification in a securities fraud action. *See id.* 5:12-20; *Amgen, Inc. v. Connecticut Retirement Plans & Tr. Funds*, 133 S. Ct. 1184, 1191 (2013).

In 2015 and early 2016, the parties participated in two mediation sessions before the Honorable Vaughn R. Walker and the Honorable Dickran M. Tevrizian. *See McDonald Decl.*, ¶¶ 115-17. Although both mediation sessions ended without resolution, the parties agreed to continue conversations. *Id.* ¶¶ 116-17. In June 2016, Judge Tevrizian communicated a "mediator's proposal" that the parties accepted. *Id.* ¶ 118. The proposed $95 million cash settlement in principle was reached less than four weeks before trial and little more than a week before the scheduled hearing on the parties' summary judgment motions. *See id.* ¶ 114.

On July 20, 2016, the parties executed a Stipulation and Agreement of Settlement. *See* Dkt. # 581, Ex. 3. Pursuant to the Stipulation, the proceeds of the settlement will be allocated and distributed by Epiq Class Action & Claims Solutions, Inc. ("Epiq"), who will determine each class member's pro rata share of the net settlement based on several factors, including when the class member purchased the common stock, call options, or bonds, and whether class members sold or held the securities during the class period. *See id.* ¶ 123. Class Representative's expert estimates that the average recovery per share of Amgen common stock will be approximately $0.08 per share and approximately $1.25 per bond with a par value of $1,000 after deduction of attorneys' fees and expenses. *Notice of Proposed Class Action Settlement*, Dkt. # 581, Ex. 3, at 3.

The Court granted preliminary approval of the class action settlement on August 9, 2016. *See* Dkt. # 587. Class Counsel now seeks final approval of the settlement and the plan of allocation, as well as attorneys' fees and expenses, and the reasonable expenses of Class Representative. *See* Dkts. # 589, 590.

## II. Discussion

### A. Final Approval of the Class Settlement

#### *i. Legal Standard*

A court may finally approve a class action settlement "only after a hearing and on finding that the settlement . . . is fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). In determining whether a settlement is fair, reasonable, and adequate, the district court must "balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity

and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of proceedings; the experience and views of counsel; the presence of a government participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) (noting that the list of factors is "by no means an exhaustive list").

The district court must approve or reject the settlement as a whole. *See Hanlon*, 150 F.3d at 1026 ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."). The Court may not delete, modify, or rewrite particular provisions of the settlement. *Id.* The Court is cognizant that the settlement "is the offspring of compromise; the question . . . is not whether the final product could be prettier smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.* Moreover, the Ninth Circuit had recognized that "there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Synocor ERISA Litig.*, 516 F.3d 1095, 1011 (9th Cir. 2008).

ii. *Discussion*

This Section discusses each of the *Hanlon* factors for determining whether a settlement is reasonable and favorable to a class. Ultimately, the Court finds that the settlement is favorable, and it grants Class Representative's Motion for Final Approval of the Settlement.

*a. Strength of Plaintiff's Case*

The first important consideration in judging the reasonableness of a settlement is the strength of plaintiffs' case on the merits balanced against the amount offered in the settlement. *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488 (C.D. Cal. 2010) (internal quotation marks omitted). Although Class Counsel believes that the case that it developed is strong, counsel understands that there are significant risks of less or no recovery. *Mot. for Final Approval*, 12:24-13:2.

To prove liability under the Exchange Act, Plaintiffs need to show that (1) Defendants were responsible for allowing materially false or misleading representations to enter the market, (2) Defendants acted with scienter, (3) Plaintiffs' losses were caused by Defendants' misrepresentations, and (4) Class Representative and the class members suffered damages. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005). Plaintiffs recognized that proving each of these elements posed significant risks. *See Mot. for Final Approval*, 13:3-16:20.

To take the element of scienter as an example, courts have recognized that a defendant's state of mind in a securities case is the most difficult element of proof and one that is rarely supported by direct evidence. *See id.* 14:16-24. Because of the difficulties associated with direct evidence, class counsel likely would have relied on circumstantial evidence to show that Defendants were aware that Aranesp demonstrated an increased risk to consumers. *McDonald Decl.*, ¶ 108. Class Counsel faced the risk that the Court would exclude Plaintiffs' most convincing circumstantial evidence, namely, Defendants' criminal plea transcript, hearing transcript, or plea agreement, under the Rules of Evidence. *Mot. for Final Approval*, 14:25-27. These evidentiary concerns presented Plaintiffs with no assurance that a jury would interpret the available evidence to find scienter. *Id.* 14:19-22.

Plaintiffs further point out that the proposed settlement award is a proper compromise between the risks of litigation and the guarantee of recovery. *Id.* 16:8-26. Plaintiffs acknowledge that the complex questions presented by the elements of falsity, scienter, and loss causation would have required the parties to present competing scientific and damages expert witnesses at trial. *Id.* Courts have recognized that, in a "battle of experts," the outcome cannot be guaranteed. *See, e.g., In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 735 (2d Cir. 1986). The settlement eliminates the risk that the jury might award less than the amount of the settlement or nothing at all to the class. Given the above considerations, the Court agrees that this factor weighs in favor of approving the settlement.

*b. Risk, Expense, Complexity, and Duration of Further Litigation*

The second factor in assessing the fairness of the proposed settlement is the complexity, expense, and likely duration of the lawsuit if the parties had not reached a settlement agreement. *Officers for Justice*, 688 F.2d at 625. A trial of a complex, fact-intensive case like this could have taken weeks, and the likely appeals of rulings on summary judgment and at trial could have added years to the litigation. *See Mot. for Final Approval* 17:5-7. This litigation has already been underway for nine years, and trial and appeal would only push recovery further down the road. *Id.* 1:11-15. Given these considerations, the Court agrees that this factor weighs in favor of approving the settlement.

*c. Value of Settlement*

The third factor in assessing the fairness of the proposed settlement is the amount of the settlement. "[T]he very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624. The Ninth Circuit has

explained that "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625 (citations omitted). Rather, any analysis of a fair settlement amount must account for the risks of further litigation and trial, as well as expenses and delays associated with continued litigation.

The parties have agreed to settle all claims for a $95 million cash settlement. *Mot. for Final Approval*, 18:1. Class Representative's expert estimates that the average recovery per share of Amgen common stock would be approximately $0.08 per share and approximately $1.25 per bond with a par value of $1,000 after the deduction of attorneys' fees and expenses. *Notice of Proposed Class Action Settlement*, 3. This settlement amount exceeds both the average and median reported securities class action settlement amounts since the Private Securities Litigation Reform Act ("PSLRA") in 1995. *Id.* 18:1-16. The average settlement amount in 2015 was $52 million. *Id.* Class counsel believes that this settlement is the second highest securities class action settlement in California over the past two years. *See McDonald Decl.*, ¶ 142. The Court agrees with Plaintiffs' assessment of the value of the settlement. Accordingly, the Court finds that this factor too counsels in favor of approving the settlement.

*d. The Extent of Discovery Completed and the Stage of the Proceedings*

The next factor requires the Court to gauge whether Plaintiffs have sufficient information to make an informed decision about the merits of their case. *See Dunleavy*, 213 F.3d at 459. The more discovery that has been completed, the more likely it is that the parties have "a clear view of the strengths and weaknesses of their cases." *Young v. Polo Retail, LLC*, C 02-4546 VRW, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007) (internal quotation marks and citations omitted).

This case has been litigated for more than nine years, *Mot. for Final Approval* 1:11-15, and included an interlocutory appeal to the Ninth Circuit and, ultimately, to the U.S. Supreme Court. The parties reached a settlement nine days before summary judgment motions were to be argued and twenty-seven days before trial. *Id.* Class representative and Defendants had already exchanged trial exhibit lists, witness lists, and deposition designations. *Id.* 18:22-24. Over the course of discovery, the parties exchanged more than 22 million pages of documents and thirty-six expert reports on clinical trials, biostatistics, oncology, FDA rules and regulations, marketing, loss causation, and damages. *Id.* 7:8-14; 18:24-26. Class representative served or responded to more than seventy interrogatories and 150 requests for admission. *Id.* Given that discovery had been completed and this case was on the verge of trial at the time of the settlement, the Court finds that Class Representative had enough information to make an

informed decision about settlement based on the strengths and weaknesses of its case. This factor thus weighs in favor of granting final approval.

*e. The Experience and Views of Class Counsel*

The recommendations of Plaintiffs' counsel are given a presumption of reasonableness. *See, e.g., In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citation omitted). "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enter Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

Here, Class Counsel has extensive experience in securities-fraud class action litigation. *Mot. for Final Approval*, 20:1-24. Labaton Sucharow LLP has participated as lead or co-lead counsel for major institutional investors in numerous class actions, including *In re American Int'l Grp., Inc. Sec. Litig.*, No. 4-8141 (S.D.N.Y.) (settlement in the amount of $1 billion); *In re Countrywide Fin. Corp. Sec. Litig.*, No. C 07-5295 (C.D. Cal.) (settlement in the amount of $600 million); and *In re HealthSouth Corp. Sec. Litig.*, No CV-03-1500 (N.D. Ala.) (settlement in the amount of $600 million). *See id.* 20. Class Counsel believes that the settlement is a "very favorable result" that is in the best interest of the class. *Mot. for Final Approval*, 20:25-21:5. The Court sees no reason to rebut the presumption that Class Counsel's recommendation should be regarded as reasonable. This factor thus weighs in favor of class approval.

*f. Presence of a Government Participant*

Because no government entities are participants in this case, this factor is neutral.

*g. Class Members' Reaction to the Proposed Settlement*

In evaluating the fairness, adequacy, and reasonableness of settlement, courts also consider the reaction of the class to the settlement. *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003). "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *see also Arnold v. Fitflop USA, LLC*, CV 11-973 W (KSCx), 2014 WL 1670133, at *8 (S.D. Cal. Apr. 28, 2014) (concluding that the reaction to the settlement "presents the most compelling argument favoring settlement").

Class counsel retained Epiq to provide notice and administration services for this litigation. *Thurin Decl.*, ¶ 2. Epiq mailed more than 1.5 million notice packets to potential class

members or their nominees. *See Supplemental Thurin Decl.*, ¶ 3. As of October 18, 2016, Epiq received nine exclusion requests and objections from five individuals: Jeff Brown, Don F. Hanks, Sanford J. Morganstein, and Richard and Betsy Jasinski. *Id.* ¶¶ 7-8; *see also Supplemental McDonald Decl.*, Exs. 2, 8, 11, 13.

Three preliminary observations about the objections are important. First, the objectors are few in number. *See Hanlon*, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."). Against the 1.5 million notice packets sent, the settlement prompted only four objections. *See generally McDonald Decl.* That is a miniscule percentage of the participating class. Second, Class Representative has shown that at least one of the objectors is a "professional" objector. This objector, Jeff Brown, has objected in at least twelve other class actions and filed an identical objection in another class action on the same date that he filed his objection in this class action. *See Reply Memorandum in Further Support of the Motion for Final Approval* ("*Reply*"), Dkt. # 594, 4:11-13 & 4 n.4; *see also Supplemental McDonald Decl.*, Ex. 2-7. Courts in the Ninth Circuit have routinely discounted objections from such "professional" objectors. *See In re NVIDIA GPU Litig.*, 539 F. App'x 822 (9th Cir. 2013); *Howertown v. Cargill, Inc.*, 13-446 LEK (BMKx), 2014 WL 6976041, at *3 (D. Haw. Dec. 8, 2014). Third, it is questionable whether two of the five objectors have standing to challenge the settlement. Brown has not submitted trading data to establish that he held Amgen stock during the relevant period. *See Reply* 3:13-19. Hanks bought Amgen stock in 2004 and 2006, and sold it in January 2006, before the first disclosure in this case. *See id.* 7:2-7. Hanks may have also released claims against Amgen when he settled an employment dispute with the company in 2014. *See id.* 7:1-20; *Supplemental McDonald Decl.*, Ex. 9. Because Brown and Hanks have not shown that they were aggrieved by Amgen's conduct, they may lack standing to object to the settlement. *See In re First Capital Holdings Corp. Fin. Prods. Secs. Litig.*, 33 F.3d 29, 30 (9th Cir. 1994).

With these observations in mind, the Court now turns to the content of the objections. Three of the objectors take issue with the fee and expense requests of Class Counsel, arguing that Class Counsel has not sufficiently disclosed the basis for its fee request or is undeserving of the fee amount. *See Reply* 2:22. One of the objectors raises a broad concern that class action security litigation benefits only Class Counsel and not shareholders. *See Supplemental McDonald Decl.*, Ex. 13 ("How does this help my financial interest in the company? All this settlement does is essentially pay me pennies per share (hardly worth the paperwork) for the shares I own, then reduces the value of my over all investment in the company by the price of the legal fees paid to lead counsel."). Another objector asks the Court to withhold a portion of Class Counsel's fee until the entire distribution process is complete. *See McDonald Decl.*, 2.

The Court overrules these objections. Having reviewed Class Counsel's request for attorneys' fees and expenses, the Court finds Class Counsel's request reasonable in light of the duration of this lawsuit, its complexity, and the fact that Class Counsel's request covers only a portion of its total costs, as discussed in further detail below. Moreover, the Court recognizes that securities class action litigation, while costly, is necessary to ensure the enforcement of federal securities laws. *See Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990) (recognizing that class action litigation "may be the 'superior' and only viable method" to achieve the objectives of deterrence and enforcement in addition to class compensation). Therefore, these objections do not render the settlement unfair or unreasonable.

Apart from the objections related to attorneys' fees and expenses, there are five other objections. Generally, they involve: (1) inadequate oversight over the distribution process, (2) class members who do not know when to expect payment, (3) confusion over the *cy pres* procedure, (4) whether the Court should grant the class access to sealed and redacted records, and (5) a request to clarify that the settlement stipulation excludes the ERISA class action, CV 7-5442 PSG (PLAx). *See Supplemental McDonald Decl.*, Ex. 2 at pp. 2-4, Ex. 8, at p. 6. The Court finds these remaining objections equally unavailing.[1]

As to the first and third objections, the settlement agreement addresses these concerns directly. The first objection is without merit because the Court, by virtue of this Order, retains jurisdiction over the settlement and all matters relating to the litigation. Moreover, the parties have agreed to apply to the Court for a further order that approves Epiq's distribution of the claims. *See Stipulation*, ¶ 21. These processes ensure that the Court will have adequate oversight of the distribution process. As to the third objection, the Court finds the Notice clear in stating that the Court will need to review and approve any future *cy pres* designees. *See Stipulation*, ¶ 25 (concluding that any unclaimed balance from the Net Settlement Fund "shall be contributed to non-sectarian, not-for-profit charitable organization(s) designated by Class Representative and approved by the Court"). Because the Notice provided the class with adequate information about the distribution and the *cy pres* process, the Court overrules the first and third objections. *See Settlement Notice* 19.

The second and fourth objections concern access to information, and these objections too do not warrant reconsideration of the underlying settlement. Objectors fault the Settlement Administrator for failing to provide the class with a specific date of payment. However, because

[1] One additional class member, Michael Lent, submitted a letter to the Court stating that he received the Settlement Notice too late to request exclusion from the class, opt-back into the class, or object to the Settlement. *See Supplemental McDonald Decl.*, Ex. 14. Because the Court has received only one objection of this kind, the Court concludes that Lent's letter does not reflect a pervasive problem with administration of this Settlement.

the date of the payment will depend on how quickly the Settlement Administrator processes claims and other events outside of the Administrator's control, the Settlement Administrator cannot reasonably provide the class with an exact date. *See Reply* 5:3-10. The fourth objection as to sealed documents is also without merit because the public docket already contains much of the information that the objector seeks, and because courts have recognized that objectors are not entitled to "unfettered" discovery. *See id.* 8; *Miller v. Ghirardelli Chocolate Co.*, CV 12-4936 (LBx), 2015 WL 758094, at *10.

The fifth objection concerns the adequacy of the notice sent to the class. Specifically, the objectors assert that the Notice did not clearly state that the settlement excludes the related ERISA class action. However, having reviewed the Notice, the Court finds it exceedingly clear on this point. *See Settlement Notice*, Dkt. # 591, Ex. 3 ("For the avoidance of doubt, Released Claims do not include . . . *Harris v. Amgen, Inc.*, CV 7-5442 (C.D. Cal.) . . . ."). Because the Notice clearly defines what claims are released and what claims are not, the Court overrules the fifth objection.

Having reviewed all objections and letters received by the Settlement Administrator, the Court finds no reason to conclude that the settlement is unfair or unreasonable. Even more importantly, the Court finds that the relatively few objections, even if meritorious, would not detract from the overwhelmingly positive response from the remainder of the class. Because only a miniscule percentage of the class has objected, this factor suggests that the terms of the proposed settlement are favorable to class members and counsels in favor of approving the settlement.

*h. Fair and Honest Negotiations*

Evidence that a settlement agreement is the result of genuine "arms-length, non-collusive, negotiated resolution" supports a conclusion that the settlement is fair. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Here, the parties negotiated the settlement with two experienced mediators, the Honorable Vaughn R. Walker and the Honorable Dikran Tevrizian. *McDonald Decl.*, ¶¶ 115-16. Retired judge Tevrizian has filed a declaration in support of the settlement. *Id.*, Ex. 2. In it, he convincingly expressed his belief that "this was a hard-fought litigation that resulted in substantial recovery for the Class and an equitable settlement." *Id.* ¶ 11. The Court concurs, having observed the parties in the courtroom and reviewed the parties' filings, and finds no reason to question that the negotiations were "adversarial, fair, and non-collusive." Accordingly, the Court finds that this factor too counsels in favor of approval of the settlement.

*i. Conclusion*

Having reviewed the relevant factors and found that none counsel against approval of final settlement, the Court accordingly GRANTS Class Representative's motion for final approval of the class action settlement.

B. Plan of Allocation

A plan of allocation under Rule 23 "is governed by the same standards of review applicable to the settlement as a whole; the plan must be fair, reasonable and adequate." *Vinh Nguyen v. Radient Pharma. Corp.*, SACV 11-406 DOC (MLGx), 2014 WL 1802293, at *5 (C.D. Cal. 2014). To be approved, the plan needs to have a reasonable, rational basis. *Id.*

The settlement amount is $95 million in cash. After the Court deducts attorneys' fees, expenses, and the class representative award, the settlement allows each class member to receive a pro rata share of the net settlement amount based on the Settlement Administrator's calculation of the claimant's recognized losses. *See Mot. for Final Approval*, 22:15-27. The parties have agreed to a series of formulas for calculating "recognized loss" that account for the type of security (i.e., common stock, option, bond) purchased by claimant, and whether the securities were sold (or held) during the class period. *See Thurin Decl.*, Ex. B, at 13-19 (providing formulas for how to calculate "recognized loss"); *see also McDonald Decl.*, ¶ 123. The allocation plan is consistent with the analysis of Class Representative's damage expert concerning the corrective disclosure dates and the effect on Amgen stock. *See McDonald Decl.*, ¶ 122.

The mechanics of the plan of distribution are also sound. All class members who want to participate in the distribution of the net settlement must submit a Proof of Claim by December 23, 2016. *Id.* ¶ 119. If any amount remains unclaimed, Class Representative may petition the Court to approve a *cy pres* designation to a "non-sectarian, not-for-profit charitable organization" that would receive the remaining funds. *See Stipulation*, ¶ 25. No amount of the settlement will revert back to Defendants. *Id.* ¶ 26.

The Court finds that the plan of allocation is rationally grounded in a formula that will compensate class members for the losses related to their Amgen securities. The Court additionally finds and concludes that due and adequate notice was directed to persons and entities who are Class Members, advising them of the proposed Plan of Allocation and their right to object thereto, and a full and fair opportunity was accorded to persons and entities who are Class Members to be heard with respect to the Plan of Allocation. The form and method of notifying the Class of the proposed Plan of Allocation met the requirements of Rule 23 of the Federal Rules of Civil Procedure, Section 21D(a)(7) of the Securities Exchange Act of 1934, 15

U.S.C. § 78u-4(a)(7), as amended by the PSLRA, due process, and any other applicable law, and constituted due and sufficient notice, and the best notice practicable, to all persons and entities entitled thereto.

The Court is cognizant of two purported objections to the Plan of Allocation, submitted by Don Hanks and Sanford Morganstein. As noted above, Hanks likely does not have standing to object to the settlement. But, even if he did, the Court would overrule his objection and the Morganstein objection because the Court has no reason to believe that the Plan of Allocation and the accompanying Settlement Notice are anything other than fair, reasonable, and adequate.

The Court thus approves the plan of allocation.

C. <u>Motion for Attorneys' Fees and Expenses</u>

Class counsel requests that the following be disbursed from the settlement amount: (1) $23,750,000 in attorneys' fees, which constitutes 25 percent of the total settlement amount; (2) $6,577,512.31 for litigation expenses; and (3) $30,983.99 for the reasonable expenses of the Class Representative. *See Class Counsel's Motion for an Award of Attorneys' Fees and Payment of Expenses* ("*Attorneys' Fees Mot.*") 3:5-21, 18:14-20:28, 21:1-22:8. Class Counsel asserts that its attorneys' fees request is reasonable under the common fund doctrine and the lodestar methods of calculation.

*i. Legal Standard*

Awards of attorneys' fees in class action cases are governed by Federal Rule of Civil Procedure 23(h), which provides that after a class has been certified, the Court may award reasonable attorneys' fees and nontaxable costs. The Court "must carefully assess" the reasonableness of the fee award. *See Staton*, 327 F.3d at 963; *see also Browne v. Am. Honda Motor Co., Inc.*, No. CV 09-06750 MMM (DTBx), 2010 WL 9499073, at *3–5 (C.D. Cal. Oct. 5, 2010) (explaining that in a class action case, the court must scrutinize a request for fees when the defendant has agreed to not oppose a certain fee request as part of a settlement).

Where litigation leads to the creation of a common fund, courts can determine the reasonableness of a request for attorneys' fees using either the common fund method or the lodestar method. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 944–45 (9th Cir. 2011) (finding that when a settlement establishes a common fund for the benefit of a class, courts may use either method to gauge the reasonableness of a fee request, but encouraging courts to employ a second method as a cross-check after choosing a primary method). The Court will analyze counsel's fee request under both theories.

*ii. Discussion*

*a. Percentage of the Common Fund*

Under the percentage-of-recovery method, courts typically calculate 25 percent of the fund as a "benchmark" for a reasonable fee award. *See In re Bluetooth*, 654 F.3d at 942. When assessing the reasonableness of a fee award under the common fund theory, courts consider "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *Viscaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002).

Class counsel requests that the Court approve an attorneys' fee award of 25 percent of the total settlement amount. The Court finds this request reasonable under the percentage of the common fund method because it both matches the "benchmark" and meets the *Viscaino* reasonableness factors.

Turning to the *Viscaino* factors, the Court first finds that the results are favorable to the class, given that the settlement amount exceeds both the average and median reported securities class action litigation settlements since the passage of the PSLRA. *Attorneys' Fees Mot.* 7:19-24. Second, the Court finds that the risks of litigation were real and substantial, given the strict requirements imposed by the PSLRA and the highly technical and complex claims involved in the litigation. Had Plaintiffs proceeded to trial, they would have encountered significant challenges in presenting highly technical evidence to the jury and risks in the possibility that the jury would agree with Defendants' experts. Third, the duration of the case—lasting now for nine years—counsels in favor of a large attorneys' fees award. Fourth, Class Counsel has litigated this case on a contingent fee basis, and this too counsels in favor of approving the award. *See Attorneys' Fees Mot.* 14:11-18. Fifth, the request for attorneys' fees in the amount of 25 percent falls below the range allowed in similar cases. *See, e.g.*, *In re Mattel, Inc.*, CV 99-10368 MRP (CWx), slip. op. at 2 (C.D. Cal. Sept. 29, 2003) (awarding fees of 27 percent of $122 million settlement); *In re Hewlett-Packard Co. Sec. Litig.*, CV 11-1404 AG (RNBx), slip. op. at 2-3 (C.D. Cal. Sept. 15, 2014) (awarding fees of 25 percent of $57 million settlement); *In re Mercury Interactive Corp. Sec. Litig.*, C 2-2270 JW (PVTx), slip. op. at 1 (N.D. Cal. Apr. 24, 2007) (awarding 25 percent of $78 million settlement).

Given the above considerations, the Court finds Class Counsel's attorneys' fees request reasonable under the common fund theory.

*b. Lodestar Cross-Check*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 7-2536 PSG (PLAx) | Date | October 25, 2016 |
| Title | In re Amgen Inc. Securities Litigation | | |

Although an analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit, a cross-check of the fee request with a lodestar amount can demonstrate the fee request's reasonableness. *See In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997).

Class counsel's combined "lodestar" is $49,633,060.25. This lodestar represents the hourly rates and hours worked of more than 125 attorneys at six different law firms. *See McDonald Decl.*, Ex. 11. The fees for the attorneys at Labaton Sucharow LLP in New York City comprise approximately 97 percent of the lodestar amount. *See id.* Class Counsel lodestar comprises 93,137.55 hours of work at a billing rate ranging from $750 to $985 per hour for partners, $500 to $800 per hour for "of counsels"/senior counsel, and $300 to $725 per hour for other attorneys. The Court has reviewed the attorneys' hourly rates and hours worked, and found them reasonable, given the duration of this litigation and the favorable settlement for the class.

Moreover, courts have recognized that a percentage fee that falls below counsel's lodestar strongly supports the reasonableness of the award. *See, e.g., In re Flag Telecom Holdings, Ltd. Sec. Litig.*, CV 2-3400 (CM), 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("Lead Counsel's request for a percentage fee representing a significant discount from their lodestar provides additional support for the reasonableness of the fee request."). Here, the percentage fee of $23.75 million represents a significant discount from the lodestar amount of $49.6 million—a negative multiplier of approximately .47. Such a "negative" multiplier indicates that Class Counsel is seeking payment for only a portion of the hours that they expended on the action. Because Class Counsel seeks reimbursement for a portion of their work and because Class Counsel will need to perform additional work to supervise the claims administration process, the Court finds the lodestar amount reasonable.

Having reviewed the hourly rates, the hours worked, and the multiplier requested by Class Counsel, the Court finds the requested fee amount reasonable under either the lodestar method or the percentage of the common fund. The Court therefore GRANTS Class Counsel's motion for attorneys' fees.

*c. Litigation Costs*

In addition to attorneys' fees, class counsel requests reimbursement of expenses in the amount of $6,577,512.31. *See Attorneys' Fees Motion* 18:14-18. Courts have recognized that "[a]ttorneys who created a common fund are entitled to the reimbursement of expenses they advanced for the benefit of the class." *See Vincent v. Reser*, C 11-3572 (CRB), 2013 WL

621865, at *5 (N.D. Cal. Feb. 19, 2013). In assessing whether counsel's expenses are compensable in a common fund case, courts look to whether the costs are of the type typically billed by attorneys to paying clients. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). Class counsel has provided the Court with a record of all costs incurred to date in this litigation. *See McDonald Decl.*, Ex. 5-10. The Court is satisfied that the costs are reasonable and are of the type that would typically be billed to clients, and therefore, the Court GRANTS Class Counsel's motion for costs in the amount of $6,577,512.31.

*d. Reasonable Expenses of the Class Representative*

Finally, Class Representative requests $30,983.99 in expenses related to its participation in this litigation. *Attorneys' Fees Mot.* 21:9-11. Under the PSLRA, a class representative's recovery must be "equal, on a per share basis, to the portion of the final judgment or settlement award to all other members of the class," but the PSLRA also notes that "[n]othing in this paragraph shall be construed to limited the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of the class." *See* 15 U.S.C. § 78u-4(a)(4). Thus, courts have awarded reasonable payments to compensate class representatives for the time, effort, and expenses devoted to litigating on behalf of the class. *See, e.g., In re Broadcom Corp. Class Action Litig.*, CV 6-5036 R (CWx) (C.D. Cal. Dec. 4, 2012), slip. op. at 2 (awarding costs and expenses to class representative in the amount of $21,087); *Dusek v. Mattel, Inc.*, CV 99-10864 MRP (C.D. Cal. Sept. 29, 2003), slip. op. at 2 (awarding $117,426 to three lead plaintiffs).

Connecticut Retirement monitored case developments and directed Class Counsel by reviewing and commenting on substantial filings. *See McDonald Decl.*, Ex. 13, ¶¶ 6-7. Class Representative also attended hearings in California and Washington D.C., and prepared for a two-day deposition in Los Angeles. *Id.* ¶¶ 8-9. Class Representative seeks reimbursement for the time of Catherine LaMarr, General Counsel, Office of Treasury, and the time of Solicitor General Gregory T. D'Auria and Assistant Attorney General Mark F. Kohler. *Id.* ¶ 12. The Court has reviewed Class Representative's request for costs and expenses, and found it reasonable. Accordingly, the Court GRANTS Class Representative's motion for payment of reasonable expenses.

## III. <u>Conclusion</u>

For the reasons stated above, Class Representative's Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation, and Class Counsel's Motion for an Award of Attorneys' Fees and Payment of Expenses are GRANTED. It is HEREBY ORDERED AS FOLLOWS:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 7-2536 PSG (PLAx) | Date | October 25, 2016 |
| Title | In re Amgen Inc. Securities Litigation | | |

1. The Court approves settlement of the action between Plaintiffs and Defendant, as set forth in the Settlement Agreement as fair, reasonable, and adequate. The Parties are directed to perform their settlement in accordance with the terms set forth in the Settlement Agreement;

2. Class Counsel is awarded $23,750,000 in attorneys' fees and $6,577,512.31 in litigation expenses. Class Representative Connecticut Retirement Plans and Trust Funds is awarded $30,983.99 in reasonable expenses associated with its pursuit of this litigation. The Court finds that these amounts are warranted and reasonable for the reasons set forth in the moving papers before the Court and the reasons stated in this Order;

3. If there is any balance remaining in the Net Settlement Fund after six months from the date of initial distribution and after the payment of any outstanding attorneys' fees and expenses, the Settlement Administrator shall contribute the remaining balance to non-sectarian, not-for-profit charitable organization(s) designated by Class Representative and approved by the Court.

4. Epiq is authorized to disburse funds pursuant to the terms of this Settlement Agreement and this Order;

5. This Order incorporates by reference the consistent and additional terms of the accompanying Judgment and Order Approving the Class Action Settlement;

5. Without affecting the finality of this judgment in any way, this Court hereby retains exclusive jurisdiction over Defendant and the Settlement Class Members for all matters relating to the Litigation, including the administration, interpretation, effectuation, or enforcement of the Settlement Agreement and this Order.

**IT IS SO ORDERED.**